Lucille E. ALLEN, Guardian of the Person and Estate of Annie F. Beamer, a Person of Unsound Mind, Appellant,

v.

Elizabeth PAYNE et vir, Appellees.

No. 7151.

Court of Civil Appeals of Texas.

Texarkana.

March 22, 1960.

Rehearing Denied April 19, 1960.

Kenley, Sharp, Ritter & Boyland, Longview, Enoch G. Fletcher, Grand Saline, Cornelius & Cornelius, Jefferson, for appellant.

L. F. Burke, Longview, Samuel C. Harris, Gladewater, for appellee.

DAVIS, Justice.

The opinion heretofore handed down in this case on November 3, 1959, is withdrawn and the following opinion is substituted in lieu thereof:

This suit was originally filed by Mrs. Lucille E. Allen, Guardian of the Person and Estate of her mother, Mrs. Annie F. Beamer, against Mrs. Elizabeth Payne and her husband, L. B. Payne. The suit was filed March 17, 1956. Mrs. Allen died April 9, 1956. Mr. Payne died on April 9, 1956. On March 4, 1957, W. P. Beamer, who had been appointed Guardian of Mrs. Beamer by the Probate Court of Marion County, was substituted as plaintiff in lieu of Mrs. Allen. Mrs. Annie F. Beamer died on December 14, 1957, and W. P. Beamer was substituted as plaintiff, along with Lane F. Beamer, Mrs. Nancy Beamer Dill, joined by her husband, W. Edwin Dill, Jr., and John R. Swenson and they alleged that 13 shares of stock in Franklin Life Insurance Company were assigned by Mrs. Beamer to Mrs. Payne on December 12, 1949, and that on October 15, 1955, Mrs. Beamer transferred to Mrs. Payne 82 shares of stock in the Franklin Life Insurance Company. They prayed that upon a final hearing they have judgment cancelling the assignment of said stock and that same be held to be void and of no effect, and that title to said stock certificates be adjudged to be in plaintiffs as heirs and devisees of Mrs. Beamer.

During trial of the case, it was learned that Mrs. Payne had sold the stock and the plaintiffs filed a trial amendment. In the trial amendment plaintiffs alleged that the defendant Mrs. Payne had sold and transferred the stock, a fact they did not know until during the progress of the trial. They then alleged that she had converted to her own use a total of 95 shares of stock and that this conversion was unlawful and that undue influence was used in procuring said stock by defendant, and that it was an overreaching of the trust relationship between defendant Mrs. Payne and Annie F. Beamer in effecting the transfer. They then prayed for judgment for the highest market value of such stock at the time and for the value of all dividends either in stock or cash which have accrued to such stock since its transfer from Annie F. Beamer to Elizabeth Payne.

In their second amended original petition, plaintiffs alleged that Mrs. Beamer had been adjudged a non compos mentis in Van Zandt County and Mrs. Allen was appointed her Guardian. Then they alleged that Mrs. Allen had died and Mr. Beamer was appointed guardian for his mother, Mrs. Beamer, by the County Court of Marion County. Upon a trial of the case before a jury, there were numerous references made to the trial in Van Zandt County with reference to who testified and what the court did. Mrs. Payne objected to all of such testimony but the trial court overruled the objections. This was after the last transfer of any stock for which this suit was filed, and all the testimony with reference to the trial of Mrs. Beamer in Van Zandt County was hearsay and not even the judgment of conviction was ad-

missible to prove the fact. Uecker v. Zuercher, 54 Tex.Civ.App. 289, 118 S.W. 149, wr. ref.; Joy v. Joy, Tex.Civ.App., 156 S.W.2d 547, wr. ref., w. o. m.; Smith v. Riviere, Tex.Civ.App., 248 S.W.2d 526, n. w. h.

A careful examination of their second amended original petition does not reveal that plaintiffs seriously contended that Mrs. Beamer was a person of unsound mind. They alleged that she was "mentally incapacitated to the extent that she did not know and understand the nature and character of the transactions, nor the nature and effect of her act in signing the transfer and that the same is of no force and effect." They did allege that she was so "weakened and infirmed" that she was easily persuaded and was incapable of freely and voluntarily exercising her normal and usual functions of mind and body. They also alleged that Mrs. Beamer was subject to the suggestions and importunities of Mrs. Payne, and that Mrs. Payne was guilty of "gross fraud" in securing the assignments.

█ The case was tried before a jury. At the close of plaintiff's testimony, Mrs. Payne made a motion for instructed verdict, which was overruled. Then, at the conclusion of all the evidence, she made another motion for instructed verdict which was also overruled. The trial court submitted a charge with special issues to the jury and the jury answered all the issues in favor of the plaintiff. The verdict was received and filed with the clerk. Plaintiff filed a motion for judgment and defendant filed a motion for a judgment non obstante veredicto. The motion was set for hearing December 1, 1958. The trial court refused the motion of plaintiff and granted defendant's motion for judgment non obstante veredicto. Plaintiffs have appealed and bring forward 26 points of error which are grouped under eight sub-headings.

By their first four points the appellants take the position that the trial court erred in not rendering judgment on the verdict of the jury, but instead he rendered judg-

ment for the appellee. From reading the record and the Statement of Facts, we can see that the trial court granted the judgment because there was insufficient evidence upon which he should have submitted the case to the jury. We think that is the sole issue for us to decide in this appeal. Although appellants offered testimony by witnesses of some abnormal acts on the part of Mrs. Beamer, there was no showing that any of these acts occurred at or near the time the stock certificates in the Franklin Life Insurance Company were transferred. In checking the Statement of Facts, we cannot help but notice that most of the witnesses who testified for the appellants that Mrs. Beamer was at times a very brilliant person. To quote from the testimony of Moss G. Allen, a son-in-law of Mrs. Beamer, he testified to her sanity as follows:

"Q. Now, wait a minute, did you form an opinion? A. I formed an opinion, yes.

"Q. All right. What was that opinion? A. Well, that opinion was that she wasn't responsible for a lot of things, and, you know, she—her mind would come and go; now, at times she was very brilliant."

He further testified that his wife, Lucille, during her lifetime and while Mrs. Beamer lived in the house with them shortly before the death of Mrs. Allen, that Mrs. Allen borrowed $1,800 from Mrs. Beamer. It was not a settled fact from the Statement of Facts that Mrs. Beamer was actually living with Mr. and Mrs. Allen on October 15, 1955. They did not produce any testimony as to the date the 82 shares of stock were actually assigned but they offered some testimony to the effect that on *one occasion*, while Mrs. Beamer was staying with the Allens, that Mrs. Payne came to their house for the purpose of seeing Mrs. Beamer about a quotation from the Bible and while Mrs. Payne was in the room talking with Mrs. Beamer, Mr. Allen testified he saw Mrs. Payne put some papers in her

purse. He did not see Mrs. Beamer sign any papers and would not swear that the papers he saw Mr. Payne put in her purse were the papers pertaining to the 82 shares of stock. There is not one word of testimony as to any act of insanity as to Mrs. Beamer on or about October 15, 1955.

After Mrs. Beamer had been adjudged a non compos mentis and had a guardian appointed, and after Mrs. Allen had died, the Beamers sold Mrs. Beamer's homeplace in Gladewater. They made no application to the court to sell the property and Mrs. Beamer joined in the execution of the deed and in return she received one-half of what the place brought. This was her legal interest as her husband had previously died without a will.

There was testimony that she knew her relatives and her friends even up to the time of her death.

Appellees used Dr. Bain Leak, a physician, as a witness, and he testified that in his mind Mrs. Beamer was of sound mind. In answer to the question by one of the attorneys of appellant he testified as follows:

"Q. All right, and so by the same token in October 1955, her pattern of conduct and the things that she did at that time, would be the best evidence of her normality or abnormality from a mental standpoint. A. Let's just put it this way, that her conduct on any day and her behavior on any day, would be a pattern by which you would go as to whether to judge her of sound or unsound mind."

The foregoing are just a few of the instances in the record where witnesses swore that Mrs. Beamer was of sound mind. There was no testimony at all anywhere near the date Mrs. Beamer transferred the stocks, that she was of unsound mind. There was evidence of her church attendance and the pastor of the church testified that in his opinion Mrs. Beamer was a person of sound mind.

There was evidence of a trust relationship between Mrs. Beamer and Mrs. Payne. There was testimony that Mrs. Payne was to have been paid for the keeping of Mrs. Beamer for many months prior to the death of Mrs. Beamer. There was no evidence that this account had been paid other than by the transfer of these stocks. Even until the date of the trial, the surviving Beamers had so much confidence in Mrs. Payne that she still looked after the properties of Mrs. Beamer in the City of Gladewater, collected the rents, deducted a 10% commission and mailed in the remainder. She also still had a lease upon a business building that belonged to Mrs. Beamer at the time of the trial. There is not one word of testimony in this record that has the slightest tendency to show that Mrs. Payne practiced any fraud whatever upon Mrs. Beamer.

■ Appellants offered some testimony as to the value of the stocks transferred by Mrs. Beamer to Mrs. Payne. The testimony was by a stock broker who used a book that was published as a "National Stock Summary". His testimony was as to the daily bids of stocks and such information as he could get from the book. All of this testimony was hearsay and not admissible. It was admitted over the objection of appellee. Considering all these facts, we think appellant's first four points should be overruled.

What we have said in response to these four points, takes care of all the other points assigned as error in the case. We have considered each of them separately and reached the conclusion that they should be respectfully overruled.

■ After Mr. Beamer had been made a party to the suit, and prior to the death of Mrs. Beamer, the attorney for appellee took the deposition of Mrs. Beamer for the purpose of offering it in evidence at the trial of the case. Upon trial of the case, the deposition was offered in evidence but appellants objected to it as being in violation of Art. 3716, Vernon's Ann.Civ.St.

The trial court sustained the objection. Bearing in mind that it was the contention of the appellee at all times that Mrs. Beamer was of sound mind, the deposition was admissible in evidence. There was much evidence offered at the trial of the case that Mrs. Beamer was a highly educated woman and wrote articles for a Gladewater newspaper and a Fort Worth paper. The deposition should have been permitted to be offered in evidence as against Mr. Beamer, subject to other legal objections, but the court should have instructed the jury not to consider the deposition against those persons who were not parties to the suit at the time the deposition was taken. See Rule 13, Texas Annotated Rules of Civil Procedure. Rodriguez v. Shacklett, Tex.Civ.App., 144 S.W. 2d 296.

Finding no reversible error in the record, the judgment of the trial court is affirmed.