TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-93-00377-CV








Edward D. Jones & Company and Delmar "Bo" McKinney, Appellants



v.



Pat Fletcher, Independent Executrix of the Estate of Beatrice


Clark Cairns, Deceased, Appellee








FROM THE DISTRICT COURT OF MILAM COUNTY, 20TH JUDICIAL DISTRICT


NO. 22,505, HONORABLE CHARLES E. LANCE, JUDGE PRESIDING







PER CURIAM



 Appellee Pat Fletcher, as independent executrix of the Estate of Beatrice Clark
Cairns, sued appellants Delmar "Bo" McKinney, a stockbroker, and Edward D. Jones &
Company, his employer, for damages arising from Cairns's transfer of stock to her nephew
Carlton Anness and the subsequent liquidation of a Lincoln National Life Insurance Annuity
purchased with stock proceeds. Based on a jury verdict, the trial court rendered judgment for
Fletcher in the amount of $2,150,000 against Jones and in the amount of $213,000 against
McKinney and Lincoln, jointly and severally, plus interest and costs. (1) We will affirm the trial-court judgment. 

 In 1987, ninety-year-old Beatrice Cairns lived in her home cared for by her nephew
Carlton Anness and his wife Millie Anness. Cairns's mental and physical health had steadily
declined since May 1986 when she broke her pelvis. Cairns's niece Patricia Fletcher looked after
Cairns's financial affairs until the summer of 1989 when she returned the financial records to
Cairns. In 1989, Anness met with Delmar "Bo" McKinney, a stockbroker with Edward D. Jones
& Company, because, Anness claimed, Cairns wanted to give him stocks and bonds. Neither
Anness nor Cairns was McKinney's client before this time. Anness and McKinney arranged for
McKinney to visit Cairns at home to execute the stock transfer. On September 28, 1989,
McKinney and Cairns spent four hours from 7:00 p.m. until 11:00 p.m. executing the stock
transfers. The meeting resulted in the transfer of stock worth approximately $300,000 to Anness.

 In January 1990, Anness, on McKinney's advice, purchased a variable annuity from
Lincoln National Life Insurance Company. Through McKinney, Anness sold some of the stock
to purchase the annuity. Beginning in March 1990, Anness began to borrow money against the
stock portfolio; Anness ultimately failed to repay these loans. Thereafter, Anness decided to cash
in the annuity even though the surrender value was less that the original investment amount. 
Anness received approximately $190,000 from Lincoln, drove to the home of Robert Dyer in east
Texas and asked Dyer to deposit the money.

 By September 1990, Cairns's family had become increasingly concerned with
Cairns's health and was particularly concerned that Cairns would allow Anness access to a trust
established at the time of her husband's death. Her niece Patricia Weaver was appointed as
Cairns's guardian and she was moved into Weaver's home. At this time, the family learned of
the stock transfers to Anness from papers taken from Cairns's home pursuant to court orders in
the guardianship proceedings. Weaver, as Cairns's guardian, filed the suit underlying this appeal
in November 1990. Fletcher, Cairns's executrix, substituted as plaintiff after Cairns's death in
January 1991. 



"SPECIAL DUTY TO INVESTIGATE"


 In their first point of error, appellants assert that the trial court erred in rendering
judgment against Jones on Fletcher's stock transfer claim because there is no special duty to
investigate the mental capacity of elderly people to engage in stock transactions. (2) Jones does not
direct us to a portion of the judgment that expressly awards damages on the basis of such a duty
or to the specific jury question that underlies the complaint. Instead, Jones argues that a breach
of this duty was implicit because "Fletcher's claim remains grounded on the contention that a
stockbroker can incur tort liability for assisting a person in a stock transaction . . . if it is later
determined that the person lacked mental capacity to engage in the transaction."

 However, this Court need not comb the voluminous record to determine whether
the existence of a special duty was Fletcher's primary theory of recovery or whether she
abandoned the theory. See Henry S. Miller Management Corp. v. Houston State Assocs., 792
S.W.2d 128, 131 (Tex. App.--Houston [1st Dist.] 1990, writ denied). The jury answered "Yes"
to question two which asked, "Were the security transfers [from Cairns to Anness] negligent
and/or a breach of Delmar "Bo" McKinney's fiduciary duties to Beatrice Cairns and a proximate
cause of damage to Mrs. Cairns?" The court defined "negligence" as the



failure to use ordinary care, that is, failing to do that which a person of ordinary
prudence would have done under the same or similar circumstances or doing that
which a person of ordinary prudence would not have done under the same or
similar circumstances.



The jury further found that McKinney's negligence in opening a securities trading account for
Anness damaged Cairns and that McKinney was one-hundred percent responsible for the
"misconduct and/or negligence" that resulted in the stock transfers.

 Jones does not suggest why these affirmative findings are not a basis for the trial
court's judgment. Any error as to the award based on a special duty is harmless because the
award may rest equally on the finding of negligence. See Boatland of Houston, Inc. v. Bailey,
609 S.W.2d 743, 750 (Tex. 1980); Wilson v. Texas Parks & Wildlife Dep't, 853 S.W.2d 825, 832
(Tex. App.--Austin 1993), rev'd on other grounds, 886 S.W.2d 259 (Tex. 1994); De Los Santos
v. De Los Santos, 794 S.W.2d 528, 529 (Tex. App.--Corpus Christi 1990, no writ). We overrule
point of error one.



LIQUIDATION OF LINCOLN ANNUITY


 In point of error two, appellants complain that the trial court erred in rendering
judgment against McKinney on Fletcher's claim relating to liquidation of the Lincoln annuity. 
The jury found that McKinney was one-hundred percent liable for the damages resulting from the
liquidation of the annuity and that $213,000 would compensate Fletcher for the loss of the
annuity. The trial court awarded damages against McKinney and Lincoln, jointly and severally,
in this amount. Appellants again assume a sole basis for the award of damages: McKinney's
purported violation of a writ of sequestration issued in a guardianship proceeding.

 The Milam County district clerk issued a writ of sequestration in a separate cause
directing a sheriff or constable to take into possession the property listed in an exhibit to the writ
"including any property into which said property has been converted." Appellants state that the
jury found McKinney liable because he ignored a writ of sequestration that purportedly included
the annuity. Appellants argue that the writ was technically defective, did not include the Lincoln
annuity and could not bind McKinney.

 However, the record before this Court provides a broader basis for the award than
only McKinney's conduct regarding the writ of sequestration. In her second amended
supplemental petition, Fletcher alleged that McKinney negligently effected or assisted in the
transfers of Cairns's securities, negligently effected or assisted in the creation of the annuity,
negligently permitted the liquidation of the annuity and negligently failed to prevent the proceeds
from reaching Anness. Fletcher asserted as a basis for the negligence not only the breach of the
writ of sequestration but also McKinney's knowledge of the parties and the transactions
"[i]ndependent of such . . . Court order." The jury found that McKinney was negligent either in
participating in the creation and liquidation of the annuity or in his failure to prevent annuity
proceeds from reaching Anness and that such negligence damaged Cairns. The damage questions
were not limited to any particular act but were predicated on an affirmative answer to any one of
several questions.

 Regarding the annuity, the jury was asked and answered affirmatively:



QUESTION NO. 6


 Was McKinney's negligence, if any in participating in the creation of the
Annuity Contract, in participating in the liquidation of the Contract and/or in
failing to prevent the proceeds of the Contract from reaching Carlton Anness a
proximate cause of damage to Mrs. Cairns?



The definition of "negligence" previously quoted applied to question six. The jury was then

asked and answered:



QUESTION NO. 12


 What percentage of the misconduct and/or negligence that caused the
events named below do you find to be attributable to each if those found by you
to have been negligent and/or to have performed misconduct? . . . "Misconduct"
includes any of the conduct found by you in response to Questions 2, 4, 5, 7, and
9. "Negligence" includes any of the acts and/or omissions found by you in
response to Questions 2, 3, 6, 7, 10 and 11. . . .



CREATION OF ANNUITY CONTRACT


a. Delmar "Bo" McKInney 100% . . .

 Total 100%

LIQUIDATION OF ANNUITY CONTRACT

a. Delmar "Bo" McKinney 100% . . . 

 Total 100%


QUESTION No. 13


 What sum of money, if paid now in cash, would be fair and reasonable
compensation for the injuries, if any, proximately caused by the conduct in
question. . . .


Loss of Annuity Contract $213,000.00



The jury verdict encompasses all of McKinney's actions regarding the annuity; therefore, the
complaints raised as to the writ of sequestration are not determinative. See Wilson, 853 S.W.2d
at 832; De Los Santos, 794 S.W.2d at 529. The jury findings provide a basis for the award for
the loss of the annuity apart from the legal effect of the writ of sequestration. We overrule the
second point of error.



ADMISSION AND EXCLUSION OF EVIDENCE


 In points four through seven, appellants complain of the trial court's admission and
exclusion of evidence. The admission or exclusion of evidence is a matter within the trial court's
discretion. City of Brownsville v. Alvardo, 897 S.W.2d 750, 753 (Tex. 1995); Gee v. Liberty
Mut. Fire Ins. Co., 765 S.W.2d 394, 396 (Tex. 1989). A trial court abuses its discretion if it acts
without reference to any guiding principles or if the action was arbitrary or unreasonable. 
Metropolitan Life Ins. Co. v. Syntek Fin. Co., 881 S.W.2d 319, 321 (Tex. 1994); Downer v.
Aquamarine Operators, Inc., 701 S.W.2d 238, 242 (Tex. 1985), cert. denied, 476 U.S. 1159
(1986). That this Court might decide a matter differently does not show that the trial court abused
its discretion. Southwestern Bell Tel. Co. v. Johnson, 389 S.W.2d 645, 648 (Tex. 1968). To
reverse a judgment based upon evidentiary rulings, a party must show not only that the trial
court's ruling was erroneous but also that the error was calculated to cause, and did cause,
rendition of an improper judgment. Tex. R. App. P. 81(b)(1); McCraw v. Maris, 828 S.W.2d
756, 757 (Tex. 1992); American Maintenance & Rentals, Inc. v. Estrada, 896 S.W.2d 212, 221
(Tex. App.--Houston [1st Dist.] 1995, no writ). The complaining party must usually show that
the judgment turns on the particular evidence admitted or excluded. Alvardo, 897 S.W.2d at 753-54.

 In point six (B), appellants assert that the trial court erred in excluding McKinney's
testimony about legal advice received from Jones regarding the writ of sequestration. Fletcher
objected to the testimony as hearsay; appellants responded that the testimony was offered, not to
show the truth of the matter asserted, but to show McKinney's reasons for his actions with respect
to the writ. Fletcher then objected on the basis that McKinney had testified that he acted on the
advice of Jones and that the prejudicial value of any further testimony would outweigh its
probative value. See Tex. R. Civ. Evid. 403.

 In their argument, appellants merely restate the sequence of offer and objection and
present no argument as to why the trial court's ruling was error. The record includes testimony
as to McKinney's actions regarding the writ and his testimony that he sent the writ to Jones and
acted on its advice. In light of this testimony, any error as to exclusion of evidence regarding the
details of the advice is harmless. See Gee, 765 S.W.2d at 396 (any error harmless if evidence is
cumulative and not controlling on a material issue dispositive of case).

 In points four (A) and (B) and six (A), appellants complain that the trial court
improperly excluded the testimony of Gene Northcott, Leland Enochs, and Aubrey R. Williams. (3) 
In each instance, appellants direct us to the portion of the statement of facts at which they made
an informal bill of exception or offer of proof. See Tex. R. App. P. 52(b). However, appellants
did not call these persons as witnesses or offer their testimony into evidence. Appellants never
afforded the trial court an opportunity to admit or exclude the testimony. Accordingly, they have
not preserved for review any error regarding the exclusion of this testimony for review. Tex. R.
App. P. 52; Lakeway Land Co. v. Kizer, 796 S.W.2d 820, 827 (Tex. App.--Austin 1990, writ
denied); see Hur v. City of Mesquite, 893 S.W.2d 227, 230 (Tex. App.--Amarillo 1995, writ
requested) (nothing preserved for appellate review absent adverse ruling from trial court). We
overrule points of error four and six.

 In points of error five and seven, appellants assert that the trial court erred in
admitting evidence in eight instances. However, we are able to identify arguments pertinent only
to the admission of a prior judgment finding Cairns incompetent (point of error 5(A)), and to
Fletcher's testimony about appellants' removal of the case to federal bankruptcy court, their
motion for continuance, and counsel's joint appearance at a deposition (points of error 5(B)
through (D) and 7(A) through (C)). Appellants have waived points five (E) and (F) and seven (E)
because they have not provided argument or authority. Trenholm v. Ratcliff, 646 S.W.2d 927,
934 (Tex. 1983); see White v. Bath, 825 S.W.2d 227, 230 (Tex. App.--Houston [14th Dist.] 1992,
writ denied) (mere assertions without argument or authority waive error). We consider any
complaints as to the trial court's comments and bias in our discussion of point of error three.

 In point five (A), appellants complain that the trial court erred in admitting a
judgment of the Milam County district court, dated June 23, 1992, that found Cairns incompetent
"on and after December 16, 1986." Fletcher offered the judgment in connection with her
testimony; appellants made numerous objections relating to the judgment's statement as to
Cairns's mental capacity, all of which the trial court overruled. On appeal, appellants complain
only that the admission was error because the judgment's prejudicial effect outweighed any
probative value. See Tex. R. Civ. Evid. 403.

 The judgment at issue admitted to probate Cairns's will of December 15, 1986 and
stated, "In this connection the Court finds that on and after December 16, 1986, Beatrice Clark
Cairns lacked the requisite testamentary capacity to execute a will eligible for probate." At the
time it admitted the judgment, the trial court instructed the jury that the findings regarding
Cairns's testamentary capacity were not binding on the jury; the jury was to make an independent
finding as to her mental capacity.

 Numerous witnesses testified as to their perceptions or opinions regarding Cairns's
mental capacity and her ability to engage in financial transactions. Based on our review of the
record, the statement in the judgment was cumulative of other testimony and certainly not
controlling. Furthermore, the trial court clearly instructed the jury that the statement did not
release them from an independent fact finding in this case. Accordingly, the trial court did not
abuse its discretion in admitting the 1992 judgment into evidence. We overrule point of error five
(A).

 In points of error five (B) through (D) and seven (A) through (D), appellants
complain of the admission of evidence concerning their removal of the case to bankruptcy court,
their motion for continuance, and their counsel's joint appearance at Fletcher's deposition. 
Fletcher testified that appellants had removed the case to federal bankruptcy court, that the
bankruptcy court had remanded the cause to state district court, that appellants asked the trial
court for a continuance, and that at her deposition the attorneys for McKinney and Lincoln "were
together." Appellants appear to urge only that the evidence was prejudicial. However, any error
in the admission of this evidence was harmless. See McCraw, 828 S.W.2d at 757. Considering
the remainder of the evidence adduced at trial, we cannot say that the judgment turned on this
particular evidence. Alvardo, 897 S.W.2d at 753-54. The trial court did not abuse its discretion
in admitting this evidence. We overrule points of error five (B) through (D) and seven (A)
through (D).


JUDICIAL NOTICE


 In point of error eight, appellants assert that the trial court erred in taking judicial
notice of all prior proceedings "in this case" and in the guardianship and will contest cases and
by making comments prejudicial to Jones and McKinney "while taking judicial notice." In part
(B) of this point, appellants assert that the trial court erred in failing to take judicial notice that
a witness in this proceeding had not been placed under "the rule" in the guardianship proceeding. 
However, appellants offer no argument or authority as to when a trial court may or may not take
judicial notice. See Tex. R. Civ. Evid. 201; Murl A. Larkin, Article II: Judicial Notice, 20
Hous. L. Rev. 107, 119-20 (1983). Appellants have waived these complaints; therefore, we do
not address whether the trial court abused its discretion in these instances. Trenholm, 646 S.W.2d
at 934. We overrule point of error eight. (4)



SUFFICIENCY OF THE EVIDENCE


 In points of error nine (A) and ten (A), appellants assert that jury answers to
questions one through eight were not supported by sufficient evidence or were against the great
weight and preponderance of the evidence. In each instance, this Court must consider and weigh
all the evidence and should set aside the jury verdict only if it is so contrary to the overwhelming
weight of the evidence as to be clearly wrong and unjust. Cain v. Bain, 709 S.W.2d 175, 176
(Tex. 1986); In re King's Estate, 244 S.W.2d 660, 661 (Tex. 1951). If we were to reverse on
any of these points, we must detail the evidence relevant to the issue, clearly state why the
evidence is factually insufficient, and state in what regard the contrary evidence greatly outweighs
the evidence in support of the verdict. Jaffe Aircraft Corp. v. Carr, 867 S.W.2d 27, 28 (Tex.
1993); Pool v. Ford Motor Co., 715 S.W.2d 629, 635 (Tex. 1986).

 Appellants, however, state that this Court will not need to reach the factual
sufficiency points and have not set out all the evidence relating to these issues. This Court is not
required to make an independent search of the statement of facts. See Fredonia State Bank v.
American Life Ins. Co., 881 S.W.2d 279, 283 (Tex. 1994). Appellants have waived their factual
sufficiency claims raised in points nine (A) and ten (A).

 In these points, appellants also attack the legal sufficiency of the evidence in
support of the jury answers to questions one through eight. In reviewing the legal sufficiency of
the evidence, this Court considers only the evidence that tends to support the finding. Burroughs
Wellcome Co. v. Crye, 38 Tex. Sup. Ct. J. 848, 849 (June 15, 1995); Garza v. Alviar, 395
S.W.2d 821, 823 (Tex. 1965). This Court must uphold the finding if more than a scintilla of
evidence supports the finding. Stafford v. Stafford, 726 S.W.2d 14, 16 (Tex. 1987). More than
a scintilla of evidence exists when the evidence supporting the finding, as a whole, "rises to a
level that would enable reasonable and fair-minded people to differ in their conclusions." 
Transportation Ins. Co. v. Moriel, 879 S.W.2d 10, 25 (Tex. 1994).

 Although appellants state the standard of review, they do not detail the evidence
presented in support of their contentions relating to jury questions one through seven. See Jones
v. Texas Pac. Indem. Co., 853 S.W.2d 791, 796 (Tex. App.--Dallas 1993, no writ) (brief
insufficient when appellants did not discuss facts and authorities upon which they relied). 
Nevertheless, we have reviewed the statement of facts and conclude that "more than a scintilla of
evidence" supports the jury answers to questions one through seven. See Moriel, 879 S.W.2d at
25; Stafford, 726 S.W.2d at 16.

 Appellants do provide argument relating to question eight in which the jury found
that McKinney's acts or omissions were the acts of Lincoln. This question established Lincoln's
liability in regard to the creation and liquidation of the annuity contract. Because appellants are
not harmed by an award of damages against Lincoln, they may not complain of any error that
underlies the award. Buckholts Indep. Sch. Dist. v. Glaser, 632 S.W.2d 146, 150 (Tex. 1982);
Texas Dep't of Public Safety v. Kelton, 876 S.W.2d 450, 451-52 (Tex. App.--El Paso 1994, no
writ). Accordingly, we overrule points of error nine (A) and ten (A). (5)



DAMAGES


 In point of error twelve (A) and thirteen (A), appellants complain that the jury
answers to questions ten, eleven and twelve which asked about the negligence of Fletcher, Anness
and Robert Dyer were contrary to the evidence as a matter of law or, alternatively, were against
the great weight and preponderance of the evidence. In response to questions ten and eleven, the
jury failed to find that any negligence of either Fletcher or Dyer damaged Cairns; in question
twelve, the jury found McKinney one-hundred percent responsible for "the misconduct and/or
negligence that caused" the stock transfers and the creation and liquidation of the annuity. This
answer followed the failure to find that Fletcher, Dyer or Anness had any percentage of
responsibility.

 To overcome these adverse findings as a matter of law, appellants must clear two
hurdles. Sterner v. Marathon Oil Co., 767 S.W.2d 686, 690 (Tex. 1989). First, they must show
that no evidence supports the adverse finding. In making this determination, this Court reviews
the evidence that supports the finding and ignores all evidence to the contrary. Id. If no evidence
supports the finding, appellants must demonstrate that the evidence conclusively establishes the
favorable finding as a matter of law. Id.; Holley v. Watts, 629 S.W.2d 694, 696 (Tex. 1982).

 To decide the factual sufficiency challenges, we review all of the evidence to
determine if the finding is so contrary to the overwhelming weight of the evidence as to be clearly
wrong and unjust. Cain, 709 S.W.2d at 176. This Court is not free to substitute its judgment for
that of the jury. Herbert v. Herbert, 745 S.W.2d 141, 144 (Tex. 1988); Warner v. Hurt, 834
S.W.2d 404, 408 (Tex. App.--Houston [14th Dist.] 1992, no writ). Reversal is warranted only
if an evidentiary review "indicates that the great weight of the evidence supports an affirmative
answer." Herbert, 745 S.W.2d at 144.

 Appellants contend that Fletcher was at fault because she returned Cairns's financial
records to her and relinquished responsibility for Cairns's finances. However, our review of the
record does not show that appellants met their burden to show that any negligence of Fletcher
damaged Cairns. Fletcher oversaw Cairns's finances, including paying her bills, making bank
deposits and keeping track of her stocks. Fletcher returned these responsibilities to Cairns in June
or July 1989 because Cairns was signing checks without Fletcher's knowledge and allowing
Anness access to Cairns's safe deposit box. She was concerned that she could not maintain the
accounts because of these activities over which she had no control. Fletcher did not turn the
records over to Anness but gave them to Cairns, although Fletcher knew that Cairns should not
handle them herself.

 To have answered question ten affirmatively, the jury must have found first that
Fletcher was negligent and second, that her negligence was a proximate cause of damage to
Cairns. See Warner, 834 S.W.2d at 409. Regardless whether Fletcher may have negligently
relinquished her responsibilities, the record does not show that the evidence compels an
affirmative answer to the question. The evidence shows that Cairns could sign checks, that Cairns
gave Anness money when he asked and that she allowed him access to her safe deposit box in
which she kept the stock certificates. Accordingly, some evidence supports the jury's failure to
find. Considering all the evidence, we cannot say that evidence greatly preponderates in favor
of an affirmative finding. We overrule point of error twelve (A).

 Under point of error thirteen, appellants address the jury's answers to questions
eleven and twelve. In response to question twelve, the jury failed to find that Robert Dyer's
negligence in handling the annuity proceeds damaged Cairns. Anness apparently gave these
proceeds to Dyer for investment in a business venture. The evidence reflects that Dyer did not
know the source of the money, other than Lincoln, and that he deposited the money, some of
which went into certificates of deposit. Some of these were used as collateral for loans to buy
cattle and farm equipment. Dyer also testified about payments relating to a business of his;
however, he was unclear as to whether the money came from Anness or whether Anness was
involved in this particular business. Although Anness gave money to Dyer, the evidence supports
the failure to find that any negligence of Dyer damaged Cairns.

 Question twelve asked what percentage of misconduct or negligence that caused the
events in question was attributable to McKinney, Fletcher, Anness or Dyer. See Tex. R. Civ. P.
277. This question must be conditioned on an affirmative finding of negligence or misconduct;
otherwise, no comparison is possible. See generally 1 State Bar of Texas, Texas Pattern Jury
Charges PJC 4.03 (1991). Because the jury failed to find that any negligence of Fletcher or Dyer
damaged Cairns, a finding of a percentage of fault as to either was inappropriate.

 The jury may have attributed a percentage of fault to Anness only on the jury
finding that he and McKinney engaged in a conspiracy to transfer securities or liquidate the
annuity. Considering all of the evidence presented, the jury may have determined that the damage
was attributable one-hundred percent to the negligence found and not to any misconduct. Because
the evidence details McKinney's role in the transactions, some evidence supports the failure to
find that no percentage was attributable to Anness. To conclude that the negative finding was
against the great weight and preponderance of the evidence would require us to second guess the
jury. This we cannot do. Herbert, 754 S.W.2d at 144; Zamarron v. Adame, 864 S.W.2d 173,
176 (Tex. App.--Corpus Christi 1993, writ denied). We overrule point of error thirteen.

 In point of error fourteen (B), appellants contend that the trial court erred in
allowing Fletcher to amend her pleadings to seek $1,000,000 in mental anguish damages after
trial. Fletcher originally sought mental anguish damages of $200,000; she amended her pleading
to conform to the jury verdict of $1,000,000 for these damages. Appellants assert that the trial
court erred in allowing the amendment "despite the obvious surprise and prejudice to" them.

 Absent a showing of surprise or prejudice, a trial court may not refuse to allow a
party to amend the pleadings to conform the amount of damages requested to the jury's award. 
Greenhalgh v. Service Lloyds Ins. Co., 787 S.W.2d 938, 939 (Tex. 1990); see Tex. R. Civ. P.
63, 66. The party resisting amendment has the burden to show surprise or prejudice. State Bar
of Tex. v. Kilpatrick, 874 S.W.2d 656, 658 (Tex. 1994). Fletcher filed her trial amendment on
December 2, 1992, after the jury returned its verdict but before rendition of judgment. The trial
court held a hearing on the motion on January 6, 1993.

 At that hearing counsel testified that he would have proceeded differently if
Fletcher had claimed $1,000,000 in mental anguish damages in the first pleading. Fletcher filed
the pleading seeking $200,000 in mental anguish damages one week before the trial began. 
Counsel testified further that he did not change his trial strategy in response to this initial
pleading, for mental anguish damages, because "no facts had been developed to support mental
anguish damages, even in the amount of $200,000." Appellants offered no evidence that the
amendment filed after trial in which a party testified as to the amount of mental anguish damages
surprised them. In this instance the trial amendment was mandatory. Greenhalgh, 787 S.W.2d
at 941. We overrule point of error fourteen (B).

 In point of error fourteen (A), appellants assert that there is no evidence or,
alternatively, insufficient evidence to support the jury answers to question thirteen in which the
jury was asked and found:



 What sum of money, if paid now in cash, would be fair and reasonable
compensation for the injuries, if any, proximately cause by the conduct in
question? [instructions omitted]


 Beatrice Clark Cairns's mental anguish: $1,000,000.00

 Lost value of stock: $   50,000.00

 Loans not repaid: $ 100,000.00

 Loss of annuity contract: $ 213,000.00



In their argument, however, appellants address only the amount of damages awarded for mental
anguish and the lost value of the stock. Appellants have, therefore, waived complaint as to the
remaining damage awards. 

 Regarding the stock, Fletcher testified that she kept track of its value, that Cairns
received good dividends and had no interest in selling the stock, and that, after Cairns transferred
the stock to Anness, he traded it for less productive stock. As of the date of trial, the stocks, if
not transferred to Anness, would have had a value of $348,516 rather than $317,000, for a
difference in value of $31,000. Fletcher later testified that she made an error in her calculations
and that the difference in value was $50,516 and not $31,000. Accordingly, some evidence
supports the jury award of damages for the lost value of the stock. Fletcher was the only witness
to testify directly as to the value of the stocks. Appellants suggest that Fletcher testified "without
proper designation and without the necessary expertise." They did not, however, object to her
testimony on this basis. We conclude that the evidence was sufficient to support the jury finding
as to the lost value of the stocks.

 Appellants have minimally preserved a no-evidence challenge to the award of
mental anguish damages. In reviewing a finding of mental anguish damages for legal sufficiency,
this Court should first determine whether Fletcher has "introduced direct evidence of the nature,
duration, and severity of [Cairns's] mental anguish, thus establishing a subtle disruption in [her]
daily routine." Parkway Co. v. Woodruff, 38 Tex. Sup. Ct. J. 828, 835 (June 15, 1995). If the
record does not include direct evidence of the nature, duration or severity of the anguish, we
apply the no-evidence standard of review to determine whether "the record reveals any evidence
of `a high degree of mental pain and distress' that is `more than mere worry, anxiety, vexation,
embarrassment, or anger' to support any award of damages." Id. at 836 (quoting J.B. Custom
Design & Bldg. v. Clawson, 794 S.W.2d 38, 43 (Tex. App.--Houston [1st Dist.] 1990, no writ)).

 The evidence shows that after learning of Anness's transfer of her stock, Cairns
was devastated, "cried a lot," and did not understand why a family member would treat her as
Anness had treated her. Afterward, Cairns was concerned that she was penniless and remained
concerned for her welfare in spite of the family's reassurances that they would take care of her. 
Although sparse, the evidence is some evidence of a high degree of mental pain and distress. See
Comstock Silversmiths, Inc. v. Carey, 894 S.W.2d 56, 58 (Tex. App.--San Antonio 1995, no writ)
(evidence showed more than simple "vexation and embarrassment"); Havens v. Tomball
Community Hosp., 793 S.W.2d 690, 692 (Tex. App.--Houston [1st Dist.] 1990, writ denied) (to
recover for mental anguish, plaintiff must prove such painful emotions as grief, severe
disappointment, indignation, wounded pride or despair).

 Appellants assertions are more particularly directed toward causation. However,
question fourteen addressed only the amount of mental anguish damages. Other jury questions
and answers, which we have discussed, address causation. We overrule point of error fourteen
(A).

 In point of error fifteen, appellants assert that there is no evidence or, alternatively,
insufficient evidence to support the jury finding that McKinney's negligence was gross negligence. 
Other than the statements in footnote 36, we cannot locate where in appellants' brief they provide
any argument in support of this assertion. Appellants certainly have not offered any analysis of
the evidence as relates to McKinney's conscious indifference. See Moriel, 879 S.W.2d at 24-25. 
Accordingly, appellants have waived their complaint. We overrule point of error fifteen.

 In point of error sixteen, appellants state that there is no evidence or insufficient
evidence to support the amount of punitive damages awarded or, alternatively, that the amount
awarded was excessive. An appellate court cannot vacate a damage award unless the evidence
supporting the award is so factually insufficient, or the amount of the award is so against the great
weight and preponderance of the evidence, as to be manifestly unjust. Moriel, 879 S.W.2d at 30-31. "An award of [punitive] damages rests largely in the discretion of the jury and will not be
set aside as excessive unless the amount is so large as to indicate that it is the result of passion,
prejudice, or corruption, or that the evidence has been disregarded." Ethicon, Inc. v. Martinez,
835 S.W.2d 826, 835 (Tex. App.--Austin 1992, writ denied). In reviewing the award, this Court
considers: (1) the nature of the wrong; (2) the character of the conduct involved; (3) the degree
of culpability of the wrongdoer; (4) the situation and sensibilities of the parties concerned; and
(5) the extent to which the conduct offends a public sense of justice and propriety. Alamo Nat'l
Bank v. Kraus, 616 S.W.2d 908, 910 (Tex. 1981); see Moriel, 879 S.W.2d at 28 (citing Kraus
as example of factors appellate court to consider in reviewing exemplary damages). Furthermore,
we are to detail the evidence and to explain why the evidence does or does not support the jury
award. Moriel, 879 S.W.2d at 30-31; Bien, 881 S.W.2d at 862.

 Nevertheless, appellants direct their argument under this point only to an attack on
the admission of evidence of Jones' net worth and the amount of damages necessary to "send a
message" to the company. As to the latter complaint, appellants objected to the testimony of a
certified public accountant as to what judgment amount will appear on a company's financial
statement on the grounds that the testimony was not "opinion expert testimony" and invades the
province of the jury. Appellants do not argue here that this evidence was inadmissible on these
bases.

 Appellants objected to the admission in evidence of a Jones financial statement. 
The trial court gave appellants a running objection to the accountant's testimony about the
financial statement. Appellants, however, do not expressly argue that the admission of this
evidence was erroneous. See Lunsford v. Morris, 746 S.W.2d 471, 472 (Tex. 1988) ("A
defendant's `ability to pay' bears directly on the question of adequate punishment and
deterrence."). Because appellants have not shown any basis on which we may vacate the award
of punitive damages, we overrule point of error sixteen. (6)



ERROR IN SUBMISSION OF THE CHARGE


 In points of error nine (B) and (C), ten (B) through (E), and twelve (B) and (C),
appellants complain of error in submission of the charge to the jury. Appellants have relegated
their discussion of these points to footnotes and, in all but three instances, have provided no
argument or authority to support the claim of error. We overrule points of error nine (B), ten (B),
(C), and (D); and twelve (B) and (C).

 Appellants have cited authority for three of the claims of error but, even then, have
not offered any analysis of the application of the law to the facts of this case. See Catherman v.
First State Bank, 796 S.W.2d 299, 304 (Tex. App.--Austin 1990, no writ) (appellant who merely
made blanket statements regarding law of usury waived error). Nevertheless, we will address
these three points. Error in the charge is reversible only when the complaining party suffers
harm. Tex. R. App. P. 81(b)(1); Texas Dep't of Human Servs. v. Hinds, 38 Tex. Sup. Ct. J. 711,
717 (June 8, 1995); Boatland of Houston, 609 S.W.2d at 749-50. An appellate court determines
harm from an examination of the record as a whole, including the pleadings, the evidence
presented at trial, and the charge as a whole. Boatland of Houston, 609 S.W.2d at 750; Stern v.
State ex rel. Ansel, 869 S.W.2d 614, 625-26 (Tex. App.--Houston [14th Dist.] 1994, no writ).

 Appellants first assert that the trial court erred in failing to submit a requested
instruction that the jury was not bound by the June 23, 1992 judgment in which the trial court
stated that Cairns did not have sufficient mental capacity to execute a will on or after December
16, 1986. Appellants cite Carr v. Radkey, 393 S.W.2d 806, 815 (Tex. 1965) in which the court
held that an adjudication that a testatrix was of unsound mind after execution of the will at issue
was inadmissible. See Ex parte Bandy, 391 S.W.2d 543, 545 (Tex. App.--Beaumont 1965, writ
ref'd n.r.e.); Allen v. Payne, 334 S.W.2d 607, 608 (Tex. App.--Texarkana 1960, writ ref'd
n.r.e.). In each of these cases, it is unclear whether the finding relating to the testator's mental
capacity covered the time at which the will was executed. They do not support appellants'
argument that the trial court was required to submit the requested instruction. Furthermore, the
court instructed the jury at the time the judgment was admitted that the jury was to make its
independent finding as to Cairns's mental capacity. See Hinds, 38 Tex. Sup. Ct. J. at 717
(appellate court must determine not only whether trial court properly submitted charge but also
whether any error requires reversal of judgment). We overrule point of error nine (C).

 Appellants next assert that the trial court erred in not submitting a proper question
asking whether McKinney acted as Lincoln's agent other than for the sale of Lincoln insurance
products after January 24, 1990, the date on which Anness purchased the annuity. In conjunction
with this question, appellants requested instructions on the elements of agency and implied agency,
and a definition of independent contractor. Although appellants tendered the question and
instructions as a unit, they complain on appeal only of the trial court's refusal as it relates to
submission of a question or instruction regarding implied agency. See Noble Exploration, Inc.
v. Nixon Drilling, Co., 794 S.W.2d 589, 592 (Tex. App.--Austin 1990, no writ); Bugh v. Word,
424 S.W.2d 274, 277 (Tex. Civ. App.--Austin 1968, writ ref'd n.r.e.) (apparent agency arises
when principal, intentionally or by want of ordinary care, induces third person to believe apparent
agent is principal's agent).

 The trial court submitted a similar instruction on McKinney's apparent agency with
question eight which asked if McKinney were Lincoln's agent in the creation or liquidation of the
annuity contract. Either action reasonably includes the date after which Anness purchased the
annuity. Appellants offer no argument why the question as submitted improperly placed the issue
before the jury. More importantly, the requested instruction relates to Lincoln's liability for
McKinney's acts, a matter of which neither he nor Jones may complain. We overrule point of
error ten (E).

 In point of error eighteen, appellants assert that the trial court erred in the award
of damages because the court did not give "proper effect to Fletcher's judgment against Anness,
rendered in the will contest." Appellants urge, without authority, that the previous judgment
limits Fletcher's recovery in this proceeding because Fletcher stated that the values of the claims
against Anness was $700,000. Appellants, however, did not seek modification of the damage
award on this basis in the trial court. Rather, they asked the trial court to reduce the judgment
by the amount awarded against Anness in the agreed judgment. See Tex. Civ. Prac. & Rem.
Code Ann. § 33.012 (West Supp. 1995). Because appellants did not make the argument raised
here in the trial court, they have waived the complaint. Tex. R. App. P. 52(a); Morris v. Morris,
894 S.W.2d 859, 864 (Tex. App.--Fort Worth 1995, no writ); Carlisle v. Philip Morris, Inc., 805
S.W.2d 498, 518 (Tex. App.--Austin 1991, writ denied). We overrule point of error eighteen.

 In point of error nineteen, appellants ask this Court to modify the trial-court
judgment to eliminate the award in the amount of $231,000 against McKinney because Lincoln
has paid Fletcher the amount of $200,000 in settlement of her claim against the company. The
trial-court judgment awards Fletcher actual damages of $213,000 against McKinney and Lincoln,
jointly and severally. Lincoln settled with Fletcher after rendition of the judgment and perfection
of the appeal. (7)

 Appellants do not direct us to any error in the trial court's rendition of judgment
in this regard. The problem appellants face is one of execution on the judgment. Although a
party may enforce a joint and several judgment against all or only one of the judgment debtors,
the judgment creditor may have only one satisfaction for the injury. Winter v. Hamilton, 214
S.W.2d 330, 335-36 (Tex. Civ. App.--Eastland 1948, no writ). Furthermore, the details of the
settlement between Fletcher and Lincoln are not part of the record before this Court. We overrule
point of error nineteen.



LIMITATIONS


 In point of error seventeen, appellants raise two complaints about Fletcher's
limitations defense: (1) question seventeen was submitted incorrectly and (2) the jury's answer
was contrary to the evidence as a matter of law or was against the great weight and preponderance
of the evidence. The jury was asked and found:



 Did Plaintiff know or, in the exercise of ordinary care, should have known
of any of the September 1989 stock transfers more than two years prior to filing
suit against Defendants Edward D. Jones & Co. and Delmar "Bo" McKinney for
same?


 Answer "Yes" or "No"

 No .



 As to the complaint that this question was incorrectly submitted, appellants merely
restate the point of error in footnote thirty-eight. Because they have not provided any argument
or citation to authority, they have waived the complaints. We overrule points of error seventeen
(B) through (D).

 In point of error seventeen (A), appellants address the sufficiency of the evidence
to support the jury finding. Fletcher first filed suit against appellants on August 7, 1992. 
Limitations barred her claims if she knew or should have known of the stock transfers on or
before August 7, 1990. See Tex. Civ. Prac. & Rem. Code § 16.003(a) (West 1986). Appellants'
argument rests solely on Fletcher's testimony that she knew that Anness wanted Cairns's stocks. 
However, she also testified that she believed that he would wait until Cairns's death, that Cairns
told her that Anness had access to the safe deposit box because he was curious and that she first
learned of the stock transfers in September 1990. Having reviewed the evidence, we conclude
that the jury answer is neither contrary to the evidence as a matter of law of law nor against the
great weight and preponderance of the evidence. We overrule point of error seventeen (A).



PREJUDGMENT INTEREST


 Under point of error twenty, appellants contend that the trial court based the award
of prejudgment interest on an incorrect date. "[P]rejudgment interest accrues on the amount of
the judgment during the period beginning on the 180th day after the date the defendant receives
written notice of a claim or on the date suit is filed, whichever occurs first . . . ." Tex. Rev. Civ.
Stat. Ann. art. 5069-1.05, § 6(a) (West Supp. 1995). The judgment states that Fletcher's motion
for prejudgment is granted and awards interest in the amount of $136,739.72 against Jones and
in the amount of $25,326.58 against McKinney "if he, but not Lincoln, is executed upon for
prejudgment interest."

 In her motion, Fletcher predicated the amount of prejudgment interest based on
either 180 days from May 3, 1991, the day each received written notice of the claims or from July
23, 1992, the date on which suit was filed against each. The trial court awarded judgment in
amounts based on the first alternative, 180 days from May 3, 1991.

 Appellants state this measure is incorrect because the supplemental petition filed
on May 3, 1991, did not name them as defendants. Although McKinney and Jones were not
included in the suit as defendants until August 7, 1992, the May 3 supplemental petition asserts
facts underlying the claims against them and, in fact, asserts claims against them. (8) Appellants do
not address the adequacy of the supplemental petition as written notice under the statute. Because
the record supports the award of prejudgment interest, we overrule point of error twenty.



TRIAL COURT BIAS AND CUMULATIVE ERROR


 In their third point of error, (9) appellants contend that the trial court erred in
rendering judgment against them because the court's conduct of the trial was improper, was biased
in favor of Fletcher, and deprived them of a fair trial. We address the issue of judicial bias as
raised throughout appellants' arguments. Although appellants suggest in their brief that the trial
judge presided over two previous lawsuits involving the same parties and worked with Fletcher's
counsel in the county attorney's office, appellants did not file a motion to recuse. See Tex. R.
Civ. P. 18a; Enterprise-Laredo v. Hachar's, 839 S.W.2d 822, 840 (Tex. App.--San Antonio), writ
denied, 843 S.W.2d 476 (Tex. 1992). However, we do not understand appellants to complain of
any failure to recuse but rather to assert that the judge was biased and the trial unfair.

 Appellants have a right to a fair trial under both the federal and state constitutions. 
In re Murchison, 349 U.S. 133, 136 (1955); Babcock v. Northwest Memorial Hosp., 767 S.W.2d
705, 708 (Tex. 1989); Metzger v. Sebek, 892 S.W.2d 20, 37 (Tex. App.--Houston [1st Dist.]
1994, no writ h.); see Texaco, Inc. v. Pennzoil, Co., 729 S.W.2d 768, 844 (Tex. App.--Houston
[1st Dist.] 1987, writ ref'd n.r.e.) (citing Marshall v. Jerrico, Inc., 446 U.S. 238, 242 (1980))
(due process entitles person to neutrality in adjudicative proceedings). To reverse a judgment for
judicial bias, this Court must find "(1) that judicial impropriety was in fact committed, and (2)
probable prejudice to the complaining party." Metzger, 892 S.W.2d at 39; Pitt v. Bradford
Farms, 843 S.W.2d 705, 706 (Tex. App.--Corpus Christi 1992, no writ); see Tex. R. App. P.
81(b)(1). A judge is responsible for the general conduct and management of the trial. Metzger,
892 S.W.2d at 38; Food Source, Inc. v. Zurich Ins. Co., 751 S.W.2d 596, 600 (Tex. App.--Dallas
1988, writ denied). To fulfill this responsibility, the judge has "inherent power" to control the
disposition of the cases before the court "with economy of time and effort for itself, for counsel,
and for litigants." Landis v. North Am. Co., 299 U.S. 248, 254 (1936). "How this can best be
done calls for the exercise of judgment, which must weigh competing interests and maintain an
even balance." Id. at 254-55. In Texas, a trial judge's inherent power combined with the
applicable Texas Rules of Civil Procedure and Civil Evidence accord a trial court broad, though
not unfettered, discretion in handling a trial. (10)

 Accordingly, a judge has discretion in self-expression while managing at trial. 
Metzger, 892 S.W.2d at 38. However, this discretion is not unlimited. A presiding judge must
conduct the trial in a fair and impartial manner; refrain from verbally confronting or displaying
displeasure toward counsel, especially in the presence of the jury; and refrain from making
unnecessary comments or remarks that may prejudice a party. Brown v. Russell, 703 S.W.2d
843, 847 (Tex. App.--Fort Worth 1986, no writ); see Metzger, 892 S.W.2d at 38; Pitt, 843
S.W.2d at 706.

 To determine whether to reverse a judgment based on judicial impropriety, this
Court examines the entire record. Appellants assert that the trial judge frequently made
derogatory comments about appellants and their counsel and "[e]ven in the few instances when
[he] felt absolutely constrained to make a ruling for Defendants, he added inappropriate
comments." However, the remedy for these complaints is not reversal on the basis of bias. 
Grider v. Boston Co., Inc. 773 S.W.2d 338, 349 (Tex. App.--Dallas 1989, writ denied). 
Nevertheless, we have reviewed the statement of facts and conclude that appellants' claims of
trial-court bias are unfounded. We overrule point of error three.

 In point of error twenty one, appellants assert that the cumulative effect of the trial
court's multiple errors caused an improper verdict and judgment. Having considered appellants'
points of error, we find this point without merit. Point of error twenty-one is overruled.

 The judgment of the trial court is affirmed.



Before Justices Powers, Aboussie and B. A. Smith

Affirmed

Filed: August 30, 1995

Do Not Publish
1. [1] The judgment also awards $1,000,000 in exemplary damages against Lincoln. It appealed
the judgment but has settled with Fletcher and is no longer a party to the appeal. Pursuant to the
parties' joint motion and settlement agreement, this Court set aside the judgment against Lincoln
and rendered judgment that Fletcher take nothing against Lincoln. Lincoln Nat'l Life Ins. Co. v.
Fletcher, No. 3-93-377-CV (Tex. App.--Austin Feb. 23, 1994, no writ) (not designated for
publication); see Tex. R. App. P. 59(a)(1)(A). Fletcher's claims against Anness were severed
from the underlying cause on December 9, 1993.
2. [2] Appellants argue that Jones and McKinney were not liable for Cairns's stock transfer to
Anness. Because McKinney is not harmed by the award of damages against Jones, he may not
assert error in the award. Buckholts Indep. Sch. Dist. v. Glaser, 632 S.W.2d 146, 150 (Tex.
1982); Texas Dep't of Pub. Safety v. Kelton, 876 S.W.2d 450, 451-52 (Tex. App.--El Paso 1994,
no writ). However, Jones' liability is based on affirmative jury findings adverse to McKinney. 
The trial-court judgment states that it is based on McKinney's and Jones' admissions as to the
employment relationship between them.
3. [3] Gene Northcott was a tenant of Cairns who may have testified as to Cairns's mental
capacity. Appellants wished to call Aubrey Williams, an attorney, as an expert to testify about
possible legal means Fletcher's attorney may have used to protect annuity funds. Attorney Leland
Enochs previously represented Cairns and was to testify regarding her mental capacity. The
situation as to Leland Enochs testimony is unclear. Appellants wished to call Enochs, an attorney,
to testify about his perception of Cairns's mental capacity. Enochs took the stand and was
questioned outside the presence of the jury. Fletcher objected on the basis of lawyer-client
privilege. See Tex. R. Evid. 503. The trial court sustained the objection. In their brief,
appellants state that Fletcher "adduced precisely the same type of testimony" from another
witness. Accordingly, appellants have not shown any harm from the exclusion of this evidence.
4. [4] Appellants argument is directed to the fact that the trial court took judicial notice of facts
when asked to do so by Fletcher but not when asked by appellants. Appellants also direct us to
the trial court's comments regarding judicial notice. We have considered these arguments in our
discussion of point of error three.
5. [5] In point of error eleven (A), appellants complain of the evidence to support the finding that
McKinney and Anness engaged in a civil conspiracy. Because we do not sustain any of the points
relating to the jury's findings of negligence, we do not address this point or error or point of error
eleven (B) which complains of the definition of civil conspiracy submitted.
6. [6] Additionally, we note that the courts have approved ratios of exemplary damages to actual
damages higher than the ratio here. See Greenhalgh v. Service Lloyd's Ins. Co., 787 S.W.2d 938,
939 (Tex. 1990); International Armament Corp. v. King, 686 S.W.2d 595, 596 (Tex. 1985). 
7. [7] Lincoln and Fletcher filed, in this Court, their motion to set aside the judgment and dismiss
Lincoln's appeal on the basis of the settlement. Subsequently, Lincoln submitted a sworn,
unopposed motion to sever its appeal and a sworn, amended motion to sever. The amended
motion sought not only severance of the appeal but also rendition of a take-nothing judgment as
to Lincoln. In the face of these various requests for relief, this Court severed Lincoln's appeal,
set aside the judgment against Lincoln, and rendered a take-nothing judgment. Tex. R. App. P.
59(a)(1). Appellants did not complain of this action either in response to the motions or after this
Court rendered judgment or frame their point of error in terms of any effect this judgment may
have on the relief requested.
8. [8] On July 24, 1992, the district clerk filed Fletcher's motion for leave to add McKinney and
Jones & Co. as defendants. On August 7, 1992, the trial court granted the motion and the district
clerk filed the first amended supplemental petition that names appellants as defendants.
9. [9] Appellants argued points of error three through twenty one under the heading, "The Trial
Court Committed Numerous Prejudicial Errors and Denied Defendants a Fair Trial." This
organization obfuscates many of their arguments and suggests that they used minimal discretion
in choosing the strongest points to urge on appeal. When asked at oral argument if he "stood"
on the brief, appellants' counsel replied, "Yes." See Fredonia State Bank v. General Am. Life
Ins. Co., 881 S.W.2d 279, 284 (Tex. 1994) (appellate court has discretion to order party to
rebrief when brief does not comply with applicable rules). 
10. [10] For example, Texas Rule of Civil Evidence 611 provides:


The court shall exercise reasonable control over the mode and order of interrogating
witnesses and presenting evidence so as to (1) make the interrogation and
presentation effective for the ascertainment of truth, (2) avoid needless consumption
of time, and (3) protect witnesses from harassment or undue embarrassment.


Tex. R. Civ. Evid. 611 (emphasis added).