Nancy CATHERMAN, Appellant,

v.

**FIRST STATE BANK OF SMITHVILLE, Texas, et al., Appellees.**

No. 3–89–049–CV.

Court of Appeals of Texas, Austin.

Sept. 19, 1990.

Jeffrey M. Friedman, Margaret D. Kennedy, Friedman, Weddington & Hansen, Austin, for appellant.

Steve McConnico, Scott, Douglass & Luton, Austin, for appellees.

Before SHANNON, C.J., and CARROLL and ABOUSSIE, JJ.

SHANNON, Chief Justice.

Appellee First State Bank sued appellant Nancy Catherman on four promissory notes. Appellant filed counterclaims and

third-party claims against the bank and other appellees [1] asserting violation of several consumer protection statutes. Upon motion, the district court of Bastrop County rendered partial summary judgment that appellant was personally liable on the notes. After a jury trial, the district court rendered judgment that the bank recover $39,062.51 from appellant on the notes and that appellant take nothing by her counterclaims and third-party claims. This Court will reverse the judgment in part and affirm it in part.

Appellant and Donald Catherman were divorced on September 17, 1986. Before the divorce, Donald Catherman signed four notes payable to the bank: (1) an unsecured note dated April 9, 1985, for the principal amount of $2500 (Note 1); (2) a note dated January 29, 1986, for the principal amount of $28,674.49 secured by a 1979 Porsche (Note 2); (3) a note dated March 17, 1986, for the principal amount of $11,750.73 secured by a 1983 BMW (Note 3); and (4) a note dated May 29, 1986, for the principal amount of $8000 secured by a sailboat (Note 4). Nancy Catherman did not sign any of the notes.

Pursuant to the divorce judgment, appellant received the homestead, with the accompanying debt, and a horse. Donald Catherman received the Porsche, the sailboat and the debt owed on each. He also assumed the debt on the BMW automobile by reason of the court's order that he assume all debts owed the bank. The parties' daughter drove the BMW.

On September 10, 1986, Donald Catherman renewed and extended Note 1. After the divorce, he again renewed and extended this note, enlarging the principal amount to $3700. On February 2, 1986, he renewed and extended Note 2 in the principal amount of $27,528.75.

Upon Donald Catherman's failure to pay the notes, the bank filed suit against him and his former wife, Nancy Catherman. The bank asserted that the promissory notes were "joint community obligations for which [appellant] is jointly and several-

ly liable." The bank pleaded further that it did not agree to look solely to the property of Donald Catherman for payment of the notes, that the proceeds from the notes benefitted the entire Catherman family, and that appellant "impliedly assented to or, in the alternative, ratified by her words and actions the [notes]."

Appellant asserted counterclaims against the bank and third-party claims against the law firm, Payne & Vendig; attorney Yerger Hill, III; and banker John Waugh. Appellant asserted by these claims violations of the Federal Fair Debt Collection Practices Act, 15 U.S.C.A. §§ 1692a–1692o (1982 & Supp.1990); the Texas Debt Collection Act, Tex.Rev.Civ.Stat.Ann. art. 5069–11.01—5069–11.11 (1978); the Texas Deceptive Trade Practices Act, Tex.Bus. & Com. Code Ann. §§ 17.01—17.854 (1987 & Supp. 1990); and common law and statutory usury laws, Tex.Rev.Civ.Stat.Ann. art. 5069–1.01—5069–1.12 (1987 & Supp.1990).

The bank took a default judgment against Donald Catherman. Two days later, he filed for bankruptcy.

Appellant attacks the judgment by forty-three points of error. The dispositive points fall into three categories: (1) the district court erred in rendering summary judgment that appellant was personally liable on the promissory notes; (2) the district court erred in rendering a take-nothing judgment because all of the evidence is that Payne & Vendig and Yerger Hill, III, were debt collectors or, alternatively, that the jury's failure to so find was contrary to the great weight and preponderance of the evidence; and (3) the district court erred in failing to submit appellant's requested questions on usury.

We have concluded that the district court erred in rendering summary judgment that appellant is personally liable on the promissory notes. The bank sought summary judgment on the basis that appellant admitted personal liability. The appellant's "admission" consists of a statement in a letter

---

**1.** Other appellees are Payne & Vendig, the law firm representing the bank; Yerger Hill, III, an attorney in the firm; and John Waugh, a bank official.

that appellant's attorney mailed to the district court. The letter states in part:

> [W]e have endeavored to emphasize to counsel for First State Bank that we recognize the liability of Nancy Catherman on these notes *up to the extent of any non-exempt joint management community assets awarded to her in the divorce action.* Therefore, although Nancy Catherman denies she owes any sums of money to First State Bank, she does not deny a limited liability upon these notes. (Emphasis added.)

■ One is not personally liable on a promissory note unless he signs the note. Tex.Bus. & Com.Code Ann. § 3.401(a) (1968). Under certain circumstances, however, it is said that one spouse may be personally responsible for the indebtedness of the other. *Cf. Cockerham v. Cockerham,* 527 S.W.2d 162, 171 (Tex.1975). It is unnecessary in this appeal, however, to discuss such circumstances·because the bank relies solely upon appellant's "admission" to sustain the summary judgment.

■ Although it is not clear whether the bank claims that counsel's letter is an extra-judicial admission or a judicial admission, in either event, the district court erred in rendering summary judgment. If the statement in the letter is considered an extra-judicial admission, then it is only evidence of appellant's liability; it cannot serve as conclusive proof of liability. *Esteve Cotton Co. v. Hancock,* 539 S.W.2d 145, 157 (Tex.Civ.App.1976, writ ref'd n.r. e.). The weight and probable force of an extra-judicial admission are matters for the trier of facts. *Id.;* 2 C. McCormick and R. Ray, *Texas Law of Evidence* §§ 1127–29, 1147–48 (2d ed. 1956). An extra-judicial admission, therefore, is not a proper basis for summary judgment.

■ Moreover, the statement in the letter is not a judicial admission. A judicial admission is: (1) a statement made during the course of a judicial proceeding, (2) that is contrary to an essential fact or defense asserted by the person giving the testimony, (3) that is deliberate, clear, and unequivocal, (4) that, if given conclusive effect, is consistent with public policy on which the rule is based, and (5) that is not destructive of the opposing party's theory of recovery. *United States Fidelity & Guaranty Co. v. Carr,* 242 S.W.2d 224, 229 (Tex.Civ.App. 1951, writ ref'd).

■ Although the statement in the letter may not be regarded as a judicial admission for numerous possible reasons, we will address only one. We are convinced that it was not a deliberate, clear and unequivocal admission of personal liability. Although the bank insists that by the letter appellant recognized her personal liability on the promissory notes, the letter may be read, just as readily, as an acknowledgement by her that non-exempt joint management community assets awarded to her by the divorce decree are subject to execution to satisfy the judgment. In any event, the statement in the letter falls short of a "deliberate, clear and unequivocal admission of personal liability." *See Gevinson v. Manhattan Construction Co.,* 449 S.W.2d 458 (Tex.1969). We sustain appellant's first and seventh points of error.

■ We next address appellant's complaints of the take-nothing judgment regarding her counterclaims and third-party claims. Appellant pleaded four counterclaims and third-party claims: violation of the Federal Fair Debt Collection Practices Act, the Texas Debt Collection Act, the Texas Deceptive Trade Practices Act, and Texas Usury laws. We first examine appellant's complaint concerning the jury's failure to find that appellees violated the Federal and Texas Debt Collection laws. To prevail upon a claim under either the Federal Fair Debt Collection Act or the Texas Debt Collection Act, the claimant must prove that the defendant was a debt collector. By question three, the jury *failed to find* that Yerger Hill, III and Payne & Vendig were debt collectors. Question three inquired:

> Which of the following, if any, do you find from a preponderance of the evidence were debt collectors?
>
> You are instructed that a "debt collector" is any person who uses any instrumentality of interstate commerce or the

mails in any business the principal purpose of which is the collection of debts or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

ANSWER: "YES" or "NO".

a. Yerger Hill, III

___YES

___NO

b. Payne & Vendig

___YES

___NO

The jury answered "no" to both sub-parts of question three.

■ By point of error twenty-four, appellant claims that the great weight and preponderance of the evidence establishes that these appellees were debt collectors. Appellant failed to assert this claim in her motion for new trial, thereby waiving it. Tex.R.Civ.P.Ann. 324(b) (Supp.1990); *Briones v. Solomon*, 769 S.W.2d 312, 314 (Tex.App.1989, writ denied); *Daniel v. Esmaili*, 761 S.W.2d 827, 829 (Tex.App.1988, no writ). We overrule point of error twenty-four.

By point of error twenty-three, appellant contends that Yerger Hill, III and Payne & Vendig were debt collectors as a matter of law. This Court may reverse the district court's judgment on a "matter of law" point of error only if the appellant demonstrates that the evidence conclusively established all the requisite facts in support of the issue.

■ In this connection, appellees suggest that only evidence concerning work collecting consumer debts should be considered. Appellant advances the thesis, on the other hand, that evidence concerning any debt collection should be considered in determining if one "regularly collects or attempts to collect [debts]." We need not address this issue because we conclude that

even under appellant's thesis, she failed to establish, as a matter of law, that Yerger Hill, III and Payne & Vendig were debt collectors.

The proof is that Payne & Vendig handles accounts for several lending institutions; that the firm has collected consumer debts for only two banks; that less than five out of 750 to 1000 active files at the firm concern consumer debt; that approximately twenty to twenty-five percent of the cases handled for First State Bank were consumer loans; that the firm has worked on ten to fifteen consumer debt collection cases for First State Bank over the past five years; and that the firm usually does not get involved until the collateral has been sold or disposed of or if the bank needs a writ of sequestration or attachment to recollect the collateral.

■ As to Hill, the evidence was that he spends "less than one-half of one percent" of his time collecting consumer debts; that he sent less than "five demand letters concerning consumer debt in the last five years"; that he spends "less than an hour" each month working on consumer debt; and that months pass without his getting involved in consumer debt collection cases.

Appellant failed to establish conclusively that Payne & Vendig and Yerger Hill, III were debt collectors. Although attorneys at the firm worked on cases concerning consumer debt, there was no testimony concerning how many of these cases were litigation files that the firm received after collection attempts had failed and how many were files on which the firm acted as the debt collector. The testimony concerning Hill indicated that the time he spent in the practice of collecting debts was *de minimis*. Although the testimony proves that he did collect consumer debts, it cannot be said that it conclusively established him as a debt collector within the definition submitted to the jury.[2] Point of error twenty-three is overruled.

---

**2.** The district court submitted appellant's requested definition of "debt collector." Appellant, therefore, cannot complain that the definition was erroneous or incomplete. *Cf. S & A*

*Beverage Co. v. DeRouen*, 753 S.W.2d 507, 510 (Tex.App.1988, writ denied); *Continental Casualty Co. v. Thomas*, 463 S.W.2d 501, 503–04 (Tex.Civ.App.1971, no writ).

Appellant next complains that the court erroneously rendered judgment that she take nothing from her DTPA cause. Appellant relies on the DTPA only to the extent that a violation of the Texas Debt Collection Act constitutes a deceptive trade practice. *See* Tex.Rev.Civ.Stat.Ann. art. 5069–11.11(a) (1987). Accordingly, because appellant failed to prove her debt collection claim, the district court properly rendered judgment that she take nothing for her DTPA claim.

Finally, by points of error thirty-four through forty-one, appellant maintains that the court erred in failing to submit her usury claims. We overrule these points. In her brief, appellant merely makes blanket statements as to the law of usury and as to the court's role in a usury case. Appellant fails to point to any evidence in the statement of facts that supports a claim for usury. Although she states that "it is clear that the letters sent to Nancy Catherman demanded interest that was not due," appellant fails to supply record references where such might be examined. It is not enough that the complainant pleaded usury; the record must contain evidence supporting such a claim. Tex.R.Civ.P.Ann. 278 (Supp.1990). Moreover, in her complaint on appeal, appellant must refer the Court to those portions of the record that support her argument. Tex.R.App.P.Ann. 74(f) (Pamp.1990). By failing to do so, appellant has waived consideration of these points of error. *Hale v. Ramsey*, 524 S.W.2d 436 (Tex.Civ.App. 1975, no writ).

Appellant's other points of error have been considered, have been found wanting in merit, and are overruled.

The judgment is severed; that part of the judgment ordering that appellant take nothing is affirmed; that part of the judgment ordering that the bank recover from appellant on the promissory notes is reversed and that cause is remanded for trial.