**Charles MONROE d/b/a Delta Bail Bonds, Appellant,**

v.

**William FRANK, Appellee.**

No. 05–95–00922–CV.

Court of Appeals of Texas, Dallas.

Aug. 16, 1996.

contract claim. Thus, we will address the claim.

Lloyd E. Ward, Lloyd E. Ward & Associates, P.C., Dallas, for appellant.

Jeffrey W. Mankoff, Jeffrey W. Mankoff, P.C., Dallas, for appellee.

Before LAGARDE, WRIGHT, and WHITHAM [1], JJ.

## OPINION

WRIGHT, Justice.

Charles Monroe d/b/a Delta Bail Bonds (DBB) brought suit against William Frank (Frank) seeking to recover on an indemnity contract related to a bail bond. Frank counterclaimed under the Texas Debt Collection Practices Act (the Act). *See* TEX. REV. CIV. Stat. Ann. art. 5069–11.01–11.12 (Vernon 1987 & Supp.1996). When the case was called to trial, DBB nonsuited its claims. A bench trial then proceeded on Frank's counterclaim. The trial court awarded Frank judgment for $500, after applying a $1000 offset. The trial court also made conditional awards of attorney's fees.

In five points of error, DBB asserts the trial court erred in awarding judgment against it because: (1) it is not a debt collector and Frank is not a consumer under the Act; (2) Frank failed to properly plead a cause of action for mental and emotional anguish; (3) the Act does not allow for the award of punitive damages; and (4) the trial court failed to render findings of fact and conclusions of law. In a cross-point of error, Frank asserts the trial court erred in offsetting his damages by $1000. We overrule DBB's points of error and sustain Frank's cross-point of error.

## FACTUAL BACKGROUND

DBB is a licensed bail bond agency. Frank obtained a bail bond from DBB in order to secure the release from jail of a family friend, Nancy Keyes (Keyes). Frank was 81 years old at the time of trial. Frank executed two documents to obtain the bond: (1) an "Application for Indemnitor" and (2) a "Contract to Indemnify Delta Bail Bonds."

---

[1]. The Honorable Warren Whitham, Justice, Court of Appeals, Fifth District of Texas at Dallas, Retired, sitting by assignment.

The Contract to Indemnify Delta Bail Bonds (the Contract) provided as follows:

> For and in consideration of Delta Bail Bonds, hereinafter referred to as DBB, securing the release, (from jail) of *Nancy Keyes,* hereinafter referred to as Bonded Person, I, *William Frank,* hereinafter referred to as Indemnitor, agree to pay DBB the sum of *$5,000* within five (5) Days of a bond forfeiture, or writ of forfeiture of Bonded Person.
>
> In addition to the above, indemnitor agrees to pay DBB all reasonable and necessary expenses incurred, if any, therein in attempting to locate, find, attach, arrest, and submit Bonded Person as a result of the bond forfeiture or writ forfeiture.
>
> Indemnitor further agrees to pay reasonable attorney [sic] fees and court costs if a law suit is brought to recover any indemnity or expenses incurred pursuant to this contract.
>
> A bond-forfeiture occurs when it appears to the judge of the court where Bonded Person's case is docketed that Bonded Person did not appear in court and the judge so designates, notes, writes, or expresses the same on [the] court's docket.
>
> A writ forfeiture occurs when Bonded Person requires an attorney to secure a writ to obtain Bonded Person's release (from jail) and Bonded Person does not appear at the sheriff's office to post Bonded Person's Appearance Bond.
>
> Indemnitor understands that if further explanation is necessary as to the meaning of a bond forfeiture or writ forfeiture, it will be explained by DBB before Indemnitor should sign this contract.
>
> I have fully read this contract, acknowledge an understanding of bond forfeiture and writ forfeiture, and agree to its terms and conditions.[2]

(italicized portions indicate where blanks in the form were filled in by hand). The Contract was executed by Frank and DBB on March 3, 1993.

Keyes failed to appear at a hearing. A Bond Forfeiture Warrant/Arrest Warrant was issued on April 20, 1993. Keyes was arrested and placed in jail on May 17, 1993. Evidence presented at trial showed that no judgment nisi was ever signed by the criminal court judge and that DBB never paid on the bond.[3] DBB was discharged on the bond on March 10, 1995.

In late 1993, DBB contacted Frank by telephone. The caller told Frank that someone was coming over to pick up a $1000 check that Frank owed DBB. Frank advised the caller that he had not received a bill for that amount. The caller then called Frank a "son-of-a-bitch" and an "old fart." The caller also threatened to sue Frank. Frank hung up on the caller. Frank was humiliated and upset by the call. DBB filed a lawsuit against Frank several days later. Initially, DBB sought $1000 from Frank. Later it sued Frank for $5000. Frank alleged that DBB's lawsuit caused him mental anguish and humiliation.

Frank's nephew represented him in the litigation with DBB. Evidence was presented showing that the reasonable value of Frank's attorney's fees was at least $2500.

## FAILURE TO RENDER FINDINGS AND CONCLUSIONS

In its fifth point of error, DBB asserts the trial court erred in failing to render findings of fact and conclusions of law. As disposition of this point of error will affect the applicable standard of review, we will consider this point of error first.

The trial court signed the final judgment on June 5, 1995. DBB mailed its request for

---

2. *Our reproduction of the form in this opinion should not be taken as an indication that this Court endorses the Contract in any way. We express no opinion on the propriety of the Contract. We do note that Don Davis, an assistant district attorney who sits on the Dallas County Bail Bond Board, testified regarding the Contract. Mr. Davis referred to the Contract as* being "overreaching" and "absolutely unconscionable."

3. The Texas Court of Criminal Appeals has held that a bond is forfeited when the trial court signs the judgment nisi. *Dees v. State,* 865 S.W.2d 461, 463 (Tex.Crim.App.1993).

findings of fact on June 26, 1995.[4] As June 25, 1995 was a Sunday, the request was timely filed. TEX.R. CIV. P. 21a; TEX.R. CIV. P. 297. Rule 297 requires a party to file a notice of past-due findings when the trial court fails to timely file findings. TEX.R. CIV. P. 297. The transcript before us does not contain a notice of past due findings. Based on the record before us, we conclude that DBB did not satisfy the requirements of Rule 297. Therefore, we overrule DBB's fifth point of error.

## APPLICABILITY OF THE ACT

In its first two points of error, DBB asserts the Act does not apply to it because it is not a debt collector and Frank was not a consumer.[5] On appeal, DBB does not dispute that it engaged in conduct prohibited by the Act. *See* TEX.REV.CIV. STAT. ANN. art. 5069–11.02 (Vernon 1987).

### A. Standard of Review

■ When a party fails to secure findings of fact and conclusions of law from a bench trial, we will affirm the trial court's judgment on any theory that finds support in the evidence. *Davis v. Huey,* 571 S.W.2d 859, 862 (Tex.1978); *Phillips v. ACS Municipal Brokers, Inc.,* 888 S.W.2d 872, 874 (Tex.App.—Dallas 1994, no writ); *Hartford Accident & Indem. Co. v. Buckland,* 882 S.W.2d 440, 446 (Tex.App.—Dallas 1994, writ denied). We will imply all necessary findings to support the trial court's judgment. *Burnett v. Motyka,* 610 S.W.2d 735, 736 (Tex.1980); *Buckland,* 882 S.W.2d at 446.

■ When reviewing no evidence (legal sufficiency) points, we consider only the evidence and inferences that tend to support the finding and disregard all evidence and infer-ences to the contrary. *Responsive Terminal Sys., Inc. v. Boy Scouts of Am.,* 774 S.W.2d 666, 668 (Tex.1989). We must consider the evidence in the light most favorable to the verdict. *See Havner v. E–Z Mart Stores, Inc.,* 825 S.W.2d 456, 458 (Tex.1992). It is not within our power to second guess the factfinder unless only one inference can be drawn from the evidence. *Havner,* 825 S.W.2d at 461. If there is more than a scintilla[6] of evidence to support the finding, the no evidence challenge fails. *Dupree v. Texas Dep't of Protective* Servs., 907 S.W.2d 81, 83 (Tex.App.—Dallas 1995, no writ); *see Stafford v. Stafford,* 726 S.W.2d 14, 16 (Tex. 1987).

■ In reviewing factual insufficiency points, we review all of the evidence in the record, including any evidence contrary to the verdict. *Plas–Tex., Inc. v. U.S. Steel Corp.,* 772 S.W.2d 442, 445 (Tex.1989); *Dupree,* 907 S.W.2d at 83. We will set aside a jury's finding on the basis of a factual insufficiency or great weight and preponderance point only if we determine that the evidence is factually insufficient or so against the great weight and preponderance of the evidence as to be manifestly unjust, shocking to the conscience, or clearly demonstrating bias. *Ames v. Ames,* 776 S.W.2d 154, 159 (Tex. 1989); *Cropper v. Caterpillar Tractor Co.,* 754 S.W.2d 646, 652–53 (Tex.1988); *Pool v. Ford Motor Co.,* 715 S.W.2d 629, 635 (Tex. 1986); *Pilkington v. Kornell,* 822 S.W.2d 223, 230–31 (Tex.App.—Dallas 1991, writ denied). If we are inclined to reverse on the basis of a factual insufficiency or great weight and preponderance point, we must "detail the relevant evidence and clearly state why the jury's finding is factually insufficient or is so against the great weight and preponderance

---

4. The certificate of service attached to DBB's request for findings of fact and conclusions of law provides that it was "sent" to the district clerk. It does not specify a method of transmission. In its appellate brief, DBB asserts it was mailed. For present purposes, we will accept DBB's assertion that it was mailed. *See* TEX. R.APP. P. 74(f).

5. DBB never made either complaint at the trial court level. However, it was not required to do so in order to preserve legal and factual sufficiency claims. *See* TEX.R.APP. P. 52(a) and (d).

For the same reason, we will consider Frank's cross-point of error.

6. "When the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, the evidence is no more than a scintilla and, in legal effect, no evidence.... However, there is some evidence, more than a scintilla, if the evidence furnishes some reasonable basis for differing conclusions by reasonable minds as to the existence of the vital fact." *Kindred v. Con/Chem, Inc.,* 650 S.W.2d 61, 63 (Tex.1983).

as to be manifestly unjust; why it shocks the conscience; or clearly demonstrates bias." *Pool,* 715 S.W.2d at 635. Additionally, we must set forth in what regard the contrary evidence greatly outweighs the evidence in support of the verdict. *Id.* If we sustain a factual insufficiency or great weight and preponderance point, we can only remand the case. "Our present Constitution empowers the courts of appeals to 'unfind' facts, even if they cannot 'find' them." *Pool,* 715 S.W.2d at 634. We cannot substitute our interpretation of the evidence for that of the factfinder even if a different answer could be reached on the evidence. *See Herbert v. Herbert,* 754 S.W.2d 141, 144 (Tex.1988).

### B. Statutory Interpretation

 Construction of a statute is a question of law. *Johnson v. City of Fort Worth,* 774 S.W.2d 653, 656 (Tex.1989); *Trinity Universal Ins. Co. v. Fidelity & Casualty Co.,* 837 S.W.2d 202, 204 (Tex.App.—Dallas 1992, no writ). We construe statutes to give effect to the legislature's intent. *Dallas Morning News Co. v. Board of Trustees of Dallas Indep. Sch. Dist.,* 861 S.W.2d 532, 535 (Tex.App.—Dallas 1993, writ denied).

The legislature has instructed us to liberally construe statutes to achieve their purposes and to promote justice. TEX. GOV'T CODE ANN. § 312.006(a) (Vernon 1988); *see City of Dallas v. Cornerstone Bank, N.A.,* 879 S.W.2d 264, 269–70 (Tex.App.—Dallas 1994, no writ). Additionally, we must consider the evil which the statute addresses. TEX. GOV'T CODE ANN. § 312.005 (Vernon 1988).

 We begin statutory analysis by reviewing the statute. *Cail v. Service Motors, Inc.,* 660 S.W.2d 814, 815 (Tex.1983); *Trinity Universal,* 837 S.W.2d at 204. We assume the entire statute is effective and we favor public interest over any private interest. TEX. GOV'T CODE ANN. § 311.021(5) (Vernon 1988); *see Trinity Universal,* 837 S.W.2d at 204. If a statute is unambiguous, we seek the intent of the legislature as found in the plain and common meaning of the words and terms used. *Moreno v. Sterling Drug, Inc.,* 787 S.W.2d 348, 352 (Tex.1990); *Trinity Universal,* 837 S.W.2d at 204.

### C. Applicable Law

The Act contains the following definitions:

(a) "Debt" means any obligation or alleged obligation arising out of a consumer transaction;

(b) "Debt collection" means any action, conduct, or practice in soliciting debts for collection or in collecting debts owed or due, or alleged to be owed or due a creditor by a consumer;

(c) "Debt collector" means any person engaging directly or indirectly in debt collection, as defined herein, and includes any person who sells, or offers to sell, forms represented to be a collection system, device, or scheme intended or calculated to be used to collect debts.

(d) "Consumer" means any individual who owes or allegedly owes a debt created primarily for personal, family, or household purposes.

(e) "Consumer transaction" means a transaction in which one or more of the parties is a consumer.

(f) "Creditor" means a party to a consumer transaction other than a consumer.

(g) "Person" means individual, corporation, trust, partnership, incorporated or unincorporated association, or any other legal entity.

TEX.REV.CIV. STAT. ANN. art. 5069–11.01(a)–(g) (Vernon 1987).

Any person may maintain a cause of action under the Act. *See* TEX.REV.CIV. STAT. ANN. art. 5069–11.10(a) (Vernon 1987) ("Any person may seek injunctive relief to prevent or restrain a violation of this Act and any person may maintain an action for actual damages sustained as a result of a violation of this Act.").

### D. Application of Law to Facts

#### 1. Was DBB a "Debt Collector" Under the Act?

 In its first point of error, DBB asserts the trial court erred in finding that it was a debt collector under the Act. In its argument, DBB largely ignores the definitions used in the Act. Instead, DBB bases its

argument on the definition found in a similar, but distinguishable, federal statute. *See* 15 U.S.C.A. § 1692a(6) (West Supp.1996).[7] DBB also relies on the Third Court of Appeals's opinion in *Catherman v. First State Bank,* 796 S.W.2d 299 (Tex.App.—Austin 1990, no writ). Based on the federal statute and *Catherman,* DBB argues its principal business is issuing bail bonds, not collecting debts; therefore, the statute does not apply to it.

Unlike the federal statute, the Act does not require that debt collection be the principal business of a debt collector. TEX.REV. CIV. STAT. ANN. art. 5069–11.01(c). Thus, the federal statute does not support DBB's position. Likewise, *Catherman* does not support DBB's position because it is based on the federal definition of "debt collector." *See Catherman,* 796 S.W.2d at 303 n. 2.

The evidence presented at trial proved that DBB believed Frank owed it a debt and was attempting to collect that debt. The Act also applies to entities attempting to collect their own debts.[8] Thus, we conclude that there was legally and factually sufficient evidence to support the trial court's implicit finding that DBB was a debt collector.

We overrule DBB's first point of error.

### 2. Was Frank a "Consumer" Under the Act?

In its second point of error, DBB asserts Frank was not a consumer because he obtained the bail bond for Keyes and not himself. Based on this premise, DBB argues that the debt was not "personal" as that term is used in the Act.

The Act does not define "personal." Thus, consistent with the purposes of the Act, we must give the term its common meaning. TEX. GOV'T CODE ANN. § 312.006(a); *Trinity*

*Universal,* 837 S.W.2d at 204. "Personal" is defined as "of or relating to a particular person; affecting one individual or each of many individuals; peculiar or proper to private concerns; not public or general." WEBSTER'S THIRD NEW INT'L DICTIONARY 1686 (1981).

The Contract created a debt which Frank owed DBB, provided certain conditions were met. The evidence presented at trial proved that Frank obtained the bail bond (debt) to help get a family friend out of jail. A reasonable factfinder could have found that Frank derived benefit for himself from the transaction. Thus, there was legally and factually sufficient evidence to support a finding that Frank incurred the debt for personal purposes.

Furthermore, Frank was entitled to maintain a cause of action under the Act regardless of whether it was his personal debt in issue. The Act provides for remedies for "any person" adversely affected by prohibited conduct, not just parties to the consumer transaction. *Campbell v. Beneficial Fin. Co.,* 616 S.W.2d 373, 375 (Tex.Civ. App.—Texarkana 1981, no writ) ("Any person against whom the prohibited acts are committed may maintain an action for actual damages sustained as a result of those violations."). Thus, it was not necessary for Frank to prove that he incurred a debt for personal purposes in order to recover under the Act.

For the foregoing reasons, we overrule DBB's second point of error.

### DAMAGES FOR MENTAL ANGUISH AND PUNITIVE DAMAGES

In its third point of error, DBB asserts the trial court erred in awarding Frank damages for mental anguish. In its fourth point of error, DBB asserts the trial court erred in

---

7. Section 1692a(6) defines "debt collector," in part, as

> any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

15 U.S.C.A. § 1692(a)(6).

8. This is shown by other provisions of the Act which would be meaningless if the Act only applied to third-party debt collectors. *See* TEX.REV. CIV. STAT. ANN. art. 5069–11.05(p) (Vernon Supp. 1996) (defining a creditor's use of a subterfuge organization to collect debts as being prohibited conduct); TEX.REV.CIV. STAT. ANN. art. 5069–11.07A (Vernon Supp.1996) (establishing special procedures for challenging inaccuracies in third-party debt collectors' files).

awarding Frank punitive damages. DBB asserts Frank was not entitled to such damages under the Act or common law.

 There is nothing in the record showing that the trial court awarded Frank damages for mental anguish or punitive damages. The monetary award made by the trial court was consistent with evidence presented regarding attorney's fees. DBB does not dispute that attorney's fees are recoverable under the Act. *See* TEX.REV.CIV. STAT. ANN. art. 5069–11.10(a) (Vernon 1987) ("A person who successfully maintains such action shall be awarded attorney's fees reasonable in relation to the amount of work expended and costs."). Additionally, contrary to DBB's assertion, damages for mental anguish are recoverable under the Act. *Campbell,* 616 S.W.2d at 375; *see Brown v. Oaklawn Bank,* 718 S.W.2d 678, 680 (Tex.1986) (holding that damages for "serious upset" and "strain of overall situation" were recoverable under the Act).

For the foregoing reasons, we overrule DBB's third and fourth points of error.

### THE OFFSET

In his cross-point of error, Frank asserts there was no pleading or evidence to support the $1000 offset made by the trial court. We agree.

We have carefully reviewed the record in this case. There is no evidence in the record supporting the offset made by the trial court.[9]

We sustain Frank's cross-point of error. We reverse that portion of the trial court's judgment which awarded Charles Monroe d/b/a Delta Bail Bonds a $1000 offset against the damages awarded to William Frank. We render judgment that Frank recover $1500 in damages from DBB along with postjudgment interest at the rate of 6% per annum from April 7, 1995 until paid. In all other respects, the judgment of the trial court is affirmed.

---

9. Indeed, the only offset ever discussed in the record would have been a $1000 offset against any amounts *DBB* might have recovered.