# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-01-00043-CV

**Bernard Peters and Elaine Peters Pruncutz, Appellants**

**v.**

**Kerry Quinney, Appellee**

## FROM THE DISTRICT COURT OF LEE COUNTY, 335TH JUDICIAL DISTRICT
## NO. 10,405, HONORABLE H .R. TOWSLEE, JUDGE PRESIDING

Appellee Kerry Quinney sued appellants[1] Bernard Peters and Elaine Peters Pruncutz for fraud, violations of the Texas Debt Collection Practices Act, and breach of contract. The case was tried to a jury, and the jury found in Quinney's favor on all claims. Quinney was awarded $26,548 in damages, plus interest and attorney's fees. Appellants appeal from this judgment. We will affirm.

## BACKGROUND

The dispute between the parties began in October 1992 when Quinney approached Bernard Peters for a loan. Quinney needed $4,000 to pay his income tax. Having previously done business with Peters, Quinney asked Peters for the $4,000, and Peters obliged. The check was drawn

---

[1] Bernard Peters died before the case went to trial. His wife, Elaine Peters Pruncutz, was substituted in his stead. She was also sued individually for breach of contract. We will refer only to Pruncutz in our discussion of the issues presented.

from Comanche Hills' account, a company owned by Peters. As a sign of his good faith, Quinney handed Peters the title to his 1989 Lincoln Town Car to hold until Quinney could repay the loan.

When Quinney approached Peters for the loan, he informed Peters of how he intended to obtain the funds to repay the loan. Quinney had a written contract to buy two oil wells from WCS Petroleum. Quinney intended to salvage the two wells and sell them to Jimmy Luecke, who had already agreed to purchase them. Peters was in the oil business, and he and Luecke were partners; Peters was familiar with the type of transaction described by Quinney. Thus, Peters and Quinney agreed that Quinney would repay the loan after he had purchased and resold the two wells. Quinney estimated that the oil well transaction would occur by January 1, 1993, and he would be able to repay the loan by then.

Unfortunately, WCS was unable to acquire all of the outstanding royalty interests in the wells, and Quinney's purchase of the wells was delayed. Quinney ultimately sued WCS to resolve the issue. Consequently, Quinney was unable to repay the loan as quickly as he had represented to Peters. According to testimony at trial, Peters was kept fully abreast of the developments.

Several months after the loan to Quinney, Quinney and Peters met to discuss the loan. Peters asked Quinney to sign the back of the title to his Town Car, and Quinney complied. However, Quinney advised Peters that the signature on the back of the title alone was not intended to pass the title to Peters and that other paperwork would be needed.

It appears that Peters became weary waiting for repayment of the loan and decided to call the loan due. Because Quinney had not repaid the loan but had signed the back of the title to

2

his car, Peters arranged for a tow truck to arrive at Quinney's house and pick up the car. Quinney, however, would not allow his car to be towed.

Then, on April 26, 1993, Peters sought the advice of the county attorney, Steven Keng. Peters explained the terms of the loan and informed Keng that he wished to file criminal charges against Quinney for theft of the Town Car that Peters thought rightfully belonged to him. Keng advised Peters that the matter may be civil rather than criminal and that the better course of action may be to seek a civil judgment. He also informed Peters that if he filed criminal charges against Quinney, he risked being sued. Keng offered Peters the opportunity to present the charges to a grand jury to see if the jury would indict Quinney; this process would insulate Peters from liability if the charges were not substantiated against Quinney. However, the grand jury was not scheduled to meet for another several weeks, and Peters was unwilling to wait.

Peters left Keng's office and sought a justice of the peace to file a criminal complaint. Peters found Justice of the Peace Paul Fischer and related his story to Judge Fischer. Judge Fischer was also concerned that the matter may be civil rather than criminal. He telephoned Keng to seek his advice. Keng confirmed that Peters's allegations may be more appropriate for a civil suit instead of a criminal complaint. Keng nevertheless advised Judge Fischer to accept Peters's criminal complaint. Peters therefore swore out a complaint, claiming that the Lincoln Town Car rightfully belonged to him.

Based on Peters's sworn complaint, Quinney was arrested on April 26 in front of his parents' house and in the presence of his minor children. Quinney spent the night in jail and was

released the following morning. The charges against Quinney were later presented to a grand jury, and the grand jury no-billed him.

On August 23, Peters filed a civil lawsuit (cause no. 268) against Quinney. Following a bench trial, the judge rendered judgment in favor of Peters in the amount of $4,040. Quinney has not satisfied this judgment.

On July 13, 1994, Quinney filed a lawsuit against Peters, alleging false imprisonment, malicious prosecution, and slander. He later amended his pleadings to add claims for intentional infliction of emotional distress, violations of the Texas Debt Collection Practices Act, and fraud.[2] After the filing of the lawsuit, Peters died. Peters's widow, Elaine Peters Pruncutz,[3] was substituted in place of Peters pursuant to a writ of *scire facias*. *See* Tex. R. Civ. P. 152. Pruncutz filed a motion for summary judgment. The trial court granted the motion, concluding that the malicious prosecution and slander claims were barred by limitations.

The trial court ordered the parties to mediate the remaining claims before they were set for trial. Following a half day mediation, a document dated April 23, 1999, entitled "Settlement Agreement," was executed and signed by all parties. The agreement included several pertinent handwritten provisions, by which the parties agreed to the following:

3a. Excuse judgment cause #268; Peters v. Quinney

3b. Peters will pay Quinney $17,500.00 by May 30, 1999, if able.

---

[2] Quinney also added Judge Fischer as a defendant. He later dismissed his claims against Judge Fischer.

[3] By the time the dispute went to trial, Peters's widow had remarried.

3c. Lee County will not oppose expunction of Quinney's arrest.[4]

4c. The Discovery currently due 1 wk from today shall not be due now until May 30, 1999.

Quinney understood the terms "if able" in paragraph 3b to mean that if Pruncutz could negotiate a pasture lease that netted her $17,500 by the due date, she would pay Quinney that amount, and the matter would be settled. As the due date approached, Quinney's counsel, Gregory Morrison, contacted Pruncutz's attorney, Martin Placke, to determine whether Pruncutz was able to secure a pasture lease. Placke advised Morrison that Pruncutz had elected not to settle the case. Quinney later learned that Placke had approached Luecke and secured an agreement to renew his pasture lease with Pruncutz.[5] Luecke had agreed to a prepaid pasture lease for $17,500 for a term of eight years,[6] but Pruncutz would not agree to the extension of the lease. Soon after Quinney learned of Pruncutz's decision not to settle the case, Quinney added a breach of contract claim against Pruncutz.

The parties proceeded to jury trial on July 24, 2000. Quinney dropped his claims of false imprisonment and intentional infliction of emotional distress, and the only issues submitted to

---

[4] The parties disagree over the intent of this provision. Testimony at trial indicated that the provision was included to record an agreement between Judge Fischer and Quinney: Quinney would dismiss his claims against Judge Fischer if Judge Fischer would not oppose Quinney's expunction efforts. However, Judge Fischer did not participate in the mediation. Quinney eventually non-suited Judge Fischer before the jury trial commenced.

[5] Luecke was already leasing pasture from Pruncutz, but the lease was about to expire.

[6] There is some dispute between the parties over whether Luecke agreed to an eight-year or a ten- year pasture lease. However, Luecke testified by written deposition that he had agreed to an eight- year paid-up pasture lease for $17,500.

the jury were: (1) fraud, (2) violations of the Texas Debt Collection Practices Act, and (3) breach of contract. The jury found in favor of Quinney on every issue. However, the jury was not asked to award a specific amount for the breach of contract claim. Based on the jury's answers, the trial court awarded Quinney actual damages in the amount of $26,548, punitive damages of $10,000, plus attorney's fees and pre- and post-judgment interest. Pruncutz filed a motion for new trial, which was denied. By ten points of error, Pruncutz appeals the trial court's judgment.

**DISCUSSION**

By her first issue, Pruncutz challenges the legal and factual sufficiency of the evidence to support a finding that Peters violated the Texas Debt Collection Practices Act. Quinney responds that Pruncutz failed to preserve this issue for appeal. As a prerequisite to presenting a complaint for appellate review, the record must show that the complaint was made to the trial court by a timely request, objection, or motion that stated the grounds for the ruling sought from the trial court. Tex. R. App. P. 33.1. Rule 324(b) of the Texas Rules of Civil Procedure requires that a factual insufficiency point be raised in a motion for new trial before it can be raised on appeal. Tex. R. Civ. P. 324(b). To preserve a legal sufficiency point, a party must: (1) move for an instructed verdict, (2) move for a judgment notwithstanding the verdict, (3) object to the submission of a jury question, (4) move to disregard the jury's answer to a vital fact question, or (5) move for a new trial. *T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 220 (Tex. 1992). Moreover, complaints on appeal must match those presented in the trial court. *Reliance Ins. Co. v. Denton Cent. Appraisal Dist.*, 999 S.W.2d 626, 630 n.1 (Tex. App.—Fort Worth 1999, no pet.).

6

Pruncutz filed a motion for instructed verdict and a motion for new trial. In the motion for instructed verdict, Pruncutz challenged the legal sufficiency of the evidence to support Quinney's claim of violations of the Texas Debt Collection Practices Act. Pruncutz argued that Peters's conduct did not come within the provisions of the Act because the Act applies only "to certain prohibited actions of a creditor or a debt collection agency in an attempt to collect a debt arising from a consumer transaction." The motion for new trial includes a complaint that the "evidence is factually insufficient to support a finding that any of Bernard Peters' conduct constituted a violation of the Texas Debt Collection Act." We hold that Pruncutz presented these issues to the trial court with sufficient detail to preserve error for appeal.

In considering a legal sufficiency point, we consider only the evidence or inferences from the evidence favorable to the decision of the trier of fact and disregard all evidence and inferences to the contrary. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965). If the appellant did not have the burden of proof on the challenged finding, the appellant must show that no evidence supports the adverse finding; the challenge fails if more than a scintilla of evidence supports the finding. *Stafford v. Stafford*, 726 S.W.2d 14, 16 (Tex. 1987). When reviewing a factual sufficiency challenge, we must assess all the evidence and may not substitute our judgment for that of the trier of fact. When the challenge is to a finding on which the prevailing party had the burden of proof, we may reverse the judgment only if the challenged finding shocks the conscience or clearly shows bias, or if the favorable evidence is so weak as to make the judgment clearly wrong and manifestly unjust. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986).

7

Pruncutz first argues that the Act does not apply here because Quinney was not a consumer, as defined by the Act, and Peters was not a creditor or debt collector under the Act. Construction of a statute is a question of law. *Johnson v. City of Fort Worth*, 774 S.W.2d 653, 656 (Tex. 1989); *Monroe v. Frank*, 936 S.W.2d 654, 659 (Tex. App.—Dallas 1996, writ dism'd w.o.j.). The Act provides remedies for wrongful debt collection practices arising out of a debtor-creditor relationship. *Ford v. City State Bank of Palacios*, 44 S.W.3d 121, 135 (Tex. App.—Corpus Christi 2001, no pet.). The Act defines "consumer" as "an individual who has a consumer debt." Tex. Fin. Code Ann. § 392.001(1) (West Supp. 2001). Consumer debt is "an obligation, or an alleged obligation, primarily for personal, family, or household purposes and arising from a transaction or alleged transaction." *Id.* § 392.001(2). The Act does not define "personal"; therefore, consistent with the purpose of the Act, we must give the term its common meaning. *Monroe*, 936 S.W.2d at 660. "Personal" is defined as "of or relating to a particular person; affecting one individual or each of many individuals; peculiar or proper to private concerns; not public or general." *Id.* (quoting *Webster's Third New International Dictionary* 1686 (1981)). The Act defines a creditor as "a party, other than a consumer, to a transaction or alleged transaction involving one or more consumers." Tex. Fin. Code Ann. § 392.001(3). And a debt collector is "a person who directly or indirectly engages in debt collection." *Id.* § 392.001(6). The Act also applies to entities attempting to collect their own debts. *Monroe*, 936 S.W.2d at 660.

Here, Quinney testified that the purpose of the loan was so that he could pay his taxes. This evidence is both legally and factually sufficient to support a finding that Quinney's debt was incurred for personal purposes.

8

The jury also heard evidence that Peters believed Quinney owed him a debt and attempted to collect on that debt by sending a tow truck to collect Quinney's Town Car. The Act does not require that debt collection be the principal business of a debt collector. *Id.* We conclude that the evidence was both factually and legally sufficient to support the jury's implicit finding that Peters was a debt collector and creditor for purposes of the Act.

Pruncutz next argues that even if the Act does apply, Peters's conduct in attempting to recover Quinney's automobile is not prohibited by the Act. The Act provides in pertinent part:

(a) In debt collection, a debt collector may not use threats, coercion, or attempts to coerce that employ any of the following practices:

    (1) using or threatening to use violence or other criminal means to cause harm to a person or property of a person;

    (2) accusing falsely or threatening to accuse falsely a person of fraud or any other crime; . . . [or]

    (5) threatening that the debtor will be arrested for nonpayment of a consumer debt without proper court proceedings . . . .

Tex. Fin. Code Ann. § 392.301(a) (West 1998).[7] Quinney needed to prove that Peters committed only one of the acts enumerated above in order to prevail. In filing a criminal complaint with the justice of the peace, Peters swore under oath that Quinney "intentionally [and] knowingly with the intent to deprive the owner of property to WIT: One 1989 Lincoln Town Car . . . Did appropriate and exercise control of said property without of [sic] the effective consent of the owner, Bernard Peters." The jury also heard Pruncutz agree when asked if Peters had Quinney arrested because he

---

    [7] These were the only provisions of the Act set forth in the jury charge.

9

thought Quinney "had failed to live up to his word and pay him back $4,000." Pruncutz argued before the trial court that Peters thought he was entitled to the car if he could not get paid and that this was simply a dispute over ownership of the vehicle. Although the jury was presented with conflicting evidence, the evidence was both legally and factually sufficient to support a determination that Peters falsely accused Quinney of a crime, *i.e.*, theft of a vehicle. *cf. Brown v. Oaklawn Bank*, 718 S.W.2d 678, 680 (Tex. 1986) (declining to give creditor authority to determine guilt or innocence of debtor). We overrule Pruncutz's first issue.

By her second issue, Pruncutz argues the evidence is legally and factually insufficient to establish that Peters acted with intent to defraud Quinney by filing a criminal complaint against him for theft. The jury charge included the following questions:

QUESTION NO. 3:

Did Bernard Peters commit fraud against Kerry Quinney? . . .

QUESTION NO. 4:

Did Bernard Peters employ debt collection methods prohibited by law? . . .

If you answered "Yes" to Queston No. 2, 3, or 4, then answer Question No. 6. . . .

QUESTION NO. 6:

What sum of money, if paid now in cash, would fairly and reasonably compensate Kerry Quinney for his damages, if any, that resulted from the occurrence in question?

Because we have concluded that the evidence was both legally and factually sufficient to support the jury's finding of a violation of the Texas Debt Collection Practices Act, this provides a sufficient basis

10

for affirming the jury's award of damages, and we need not address Pruncutz's second issue, which challenges an independent substantive basis for the award of damages. *See* Tex. R. App. P. 47.1. Pruncutz's second issue is overruled.

By her third issue, Pruncutz challenges the legal and factual sufficiency of the evidence to support the jury's award of punitive damages; specifically, she argues that Quinney failed to establish that Peters acted with malice in filing the criminal complaint against Quinney. Punitive damages are available in cases involving the Texas Debt Collection Practices Act. *Waterfield Mortgage Co. v. Rodriguez*, 929 S.W.2d 641, 645 (Tex. App.—San Antonio 1996, no writ). The jury answered the following question affirmatively: "QUESTION NO. 5: Were the unlawful debt collection methods employed by Bernard Peters against Kerry Quinney done with malice?" Having answered yes to the question, the jury was then asked to answer the following question: "QUESTION NO. 9: What sum of money, if any, should be awarded against Bernard Peters and awarded to Kerry Quinney as exemplary damages for the conduct found in response to Question Nos. 3 and/or 5?" The jury responded with a punitive damage award of $10,000. The court's charge defines malice as "ill will, bad or evil motive, or such gross indifference to the rights of others as to amount to a willful or wanton act." Pruncutz argues that Peters's conduct could not be characterized as malicious because he had no legal training and legitimately thought that by holding the title to the vehicle, he was legally entitled to the vehicle. Thus, he believed that Quinney committed a crime against him by refusing to relinquish possession of the vehicle.

Quinney presented evidence, through the testimony of Keng and Judge Fischer, that Peters had been warned that the scenario he described could be a civil dispute rather than a criminal

11

matter. Peters had also been cautioned that by filing a criminal complaint without first presenting it to the grand jury, he risked being sued. Nevertheless, Peters filed a criminal complaint. As Keng explained, "I also think [Peters] was mad at Mr. Quinney." Keng further testified that Peters indicated to him, "I want to try to do something to [Quinney]." Although Pruncutz presented evidence demonstrating that Peters's actions may have been motivated by nothing more than ignorance of the law, Quinney presented evidence indicating that Peters was fully aware of the consequences of his actions, but was nevertheless motivated by "ill will, bad or evil motive, or gross indifference to the rights of others" to pursue those actions. It was within the province of the jury to resolve the conflicting evidence. *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 697 (Tex. 1986). Pruncutz's third issue is overruled.

Next, Pruncutz argues that the evidence is legally and factually insufficient to establish that she and Quinney reached a "meeting of the minds" on whether the settlement agreement was enforceable. Parties form a binding contract when the following elements are present: (1) an offer, (2) an acceptance in strict compliance with the terms of the offer, (3) a meeting of the minds, (4) each party's consent to the terms, and (5) execution and delivery of the contract with the intent that it be mutual and binding. *Buxani v. Nussbaum*, 940 S.W.2d 350, 352 (Tex. App.—San Antonio 1997, no writ); *McCulley Fine Arts Gallery, Inc. v. "X" Partners*, 860 S.W.2d 473, 477 (Tex. App.—El Paso 1993, no writ). An enforceable contract must be sufficiently certain so as to enable the court to determine the respective legal obligations of the parties. *T.O. Stanley Boot Co.*, 847 S.W.2d at 221. The parties may agree upon certain contractual terms and leave other matters for later negotiations, so long as the material terms of the contract are agreed upon. *Id.* It is only when an essential term

12

of a contract is left open for future negotiations that there is no binding contract. *"X" Partners*, 860 S.W.2d at 477.

The determination of a "meeting of the minds" and thus, offer and acceptance is based on the objective standard of what the parties said and did and not on their subjective state of mind. *Copeland v. Alsobrook*, 3 S.W.3d 598, 604 (Tex. App.—San Antonio 1999, pet. denied). When a party contests the existence of a meeting of the minds, as here, determination of the existence of the contract becomes a question of fact. *Buxani*, 940 S.W.2d at 352.

Pruncutz contends that there was no meeting of the minds in this case because she believed the agreement was intended to be a notation of things that were discussed. She did not understand the document to be an enforceable settlement agreement. However, in contrast to Pruncutz's testimony, the first paragraph of the settlement agreement provides: "The parties agree that this lawsuit and all claims and controversies between them are settled in accordance with the following terms: . . . ." It further provides: "[T]he parties confirm that this is a written settlement agreement as contemplated by section 154.071 of the Texas Civil Practice and Remedies Code. . . . This Agreement is made performable in Lee County, Texas, and shall be construed in accordance with the laws of the State of Texas." Pruncutz testified that she read the entire document and understood it before signing it. Based on this evidence, it was within the province of the jury to conclude that the parties reached a meeting of the minds and that the signed settlement agreement was a final and enforceable agreement.

Pruncutz also argues that she and Quinney had different interpretations of the phrase "if able." The phrase is included in a provision, which states in full: "Peters will pay Quinney

$17,500.00 by May 30, 1999, if able." Pruncutz asserts that she understood the phrase to mean "if emotionally able." Essentially, Pruncutz argues that the settlement agreement was ambiguous, and the trial court erred in resolving the ambiguity against her.

"Whether a contract is ambiguous is a question of law for the court to decide by looking at the contract as a whole in light of the circumstances present when the contract was entered." *Coker v. Coker*, 650 S.W.2d 391, 394 (Tex. 1983). A contract is ambiguous if its meaning is uncertain and doubtful or it is reasonably susceptible to more than one meaning. *Id.* at 393. If a contract is deemed ambiguous, interpretation of the contract becomes a fact issue. *Id.* at 394. In the absence of an express finding, the trial court's determination as to a contract's ambiguity is implicit in its decision to submit a jury question designed to ascertain the parties' agreement. *Exxon Corp. v. West Tex. Gathering Co.*, 868 S.W.2d 299, 302 (Tex. 1993). In this case, the trial court submitted a jury question requesting the jury to determine the intent of the parties; thus, the trial court implicitly found that the contract was ambiguous.

The jury heard evidence from both parties regarding their interpretation of the phrase "if able." Pruncutz testified that she believed the phrase was intended to provide her an option to pay the $17,500 by May 30, 1999. She believed that the phrase was included to allow her to decide whether she was emotionally able to pay the $17,500 on behalf of her late husband. She also argues that because the settlement agreement contains a provision extending the due date for discovery responses, this evidences that the parties did not intend to settle the claims by signing the agreement.

Quinney, on the other hand, provided evidence that throughout the mediation, the parties related to the mediator that Pruncutz would pay the $17,500 if she could secure the funds to

14

do so by May 30. Options were discussed, according to Quinney, for Pruncutz to obtain the funds and settle the dispute. One of the options discussed was Pruncutz securing an extension on the pasture lease of the land she owned. Pruncutz's attorney at that time, Placke, testified that sometime after the mediation, he approached Jimmy Luecke, the lessee of the pasture land, and asked if he would be willing to extend the pasture lease. Luecke testified by deposition that he was indeed amenable to an extension of the pasture lease and was willing to pay $17,500 for the extension. Based on this evidence, a jury was free to believe that the phrase "if able" meant if financially able and to disbelieve that the phrase was meant only to provide an option to pay.[8]

By her fifth issue, Pruncutz challenges the legal and factual sufficiency of the evidence to establish that Pruncutz was financially able to pay $17,500 on May 30, 1999. As explained above, Placke, Pruncutz's former attorney, testified that he approached Jimmy Luecke and asked if he would be willing to extend his lease of the pasture land. Luecke indicated that he was willing to pay $17,500 for an eight-year extension. Placke testified that in his opinion, the offer was not a fair one for Pruncutz; the term of the lease was too long and the price was too low. Pruncutz also points out that no written offer was ever made nor was there a tender of earnest money. She testified at the trial that she did not have $17,500 in her bank account; she never agreed to sell property or lease her land in order to obtain the $17,500; and Luecke's offer was not a reasonably fair one. Moreover, Pruncutz

---

[8] Pruncutz also points to the provision in the settlement agreement stating that Lee County will not contest Quinney's expunction of his arrest. Pruncutz argues that this provision is not sufficiently definite to make the contract enforceable. The jury found that the material elements of an enforceable contract between Pruncutz and Quinney were present. Any ambiguities regarding other provisions of the contract are for the trier of fact to resolve. Pruncutz did not submit questions to the jury requesting resolution of any alleged ambiguities in this provision.

argues that she never authorized Placke to approach Luecke with the idea of an extension on the lease. It was within the jury's discretion to evaluate the testimony of Placke, Pruncutz, and Luecke and determine whether based on this evidence, Pruncutz was "able" to pay the $17,500 as that term was intended in the settlement agreement. We overrule Pruncutz's fifth issue.

Pruncutz next argues that the evidence is legally and factually insufficient to support damages for mental anguish. Pruncutz did not include this issue in her motion for instructed verdict nor in her motion for new trial. Thus, she has failed to preserve this issue for appeal. Tex. R. App. P. 33.1.

Pruncutz's next issue requests this Court to reverse and render judgment in Pruncutz's favor for attorney's fees. She argues that if this Court reverses the jury's verdict regarding the breach of contract cause of action, she should then prevail on attorney's fees. Because we have overruled Pruncutz's issues challenging the sufficiency of the evidence to support the jury's finding of a breach of contract, Pruncutz is not entitled to attorney's fees. Her sixth issue is overruled.

By her seventh issue, Pruncutz contends this Court should reverse the judgment because the trial court added damages not found by the jury. The trial court's judgment awarded actual damages of $26,548. The jury was instructed to determine damages only if it found in favor of Quinney on his breach of contract, fraud, or violation of the Texas Debt Collection Practices Act claims. The question submitted to the jury regarding damages read as follows:

QUESTION NO. 6:

What sum of money, if paid now in cash, would fairly and reasonably compensate Kerry Quinney for his damages, if any, that resulted from the occurrence in question?

16

. . . .

Incidental damages.

Reasonable and necessary costs incurred by Kerry Quinney in seeking to clear his name of the criminal charges made against him by Bernard Peters.

ANSWER:    $1048

Mental anguish.

Kerry Quinney's mental anguish sustained in the past.

ANSWER:    $8000

The jury found damages of $8,000 for mental anguish[9] and incidental damages in the amount of $1,048 for Quinney's efforts in getting the criminal complaint expunged. Combined, the amounts found by the jury total $9,048, which is $17,500 short of the total amount awarded by the trial court's judgment. The jury was not asked to determine Quinney's actual damages for breach of the settlement agreement.

"[W]here a ground of recovery consists of more than one issue, and one issue is answered by the jury and another is omitted without request or objection, such omitted issue shall be deemed as found by the Court in such manner as to support the judgment." *Barcheers v. Braswell*, 548 S.W.2d 76, 78 (Tex. Civ. App.—El Paso 1977, no writ). A damage issue is a part of the ground of recovery for breach of contract and one of the issues upon which an implied finding may be made where other issues of liability are established by a jury finding. *Id.*; *Frost v. Nat'l Bank of Burge*, 29 S.W.3d 580, 593 (Tex. App.—Houston [14th Dist.] 2000, no pet.). It was incumbent upon Pruncutz

---

[9] Quinney testified at trial that he suffered mental anguish as a result of his arrest.

17

to object to the court's charge for failure to include the damage issue once she realized that Quinney did not request the submission of the issue. *Barcheers*, 548 S.W.2d at 79. Because Quinney failed to request that the damage issue be submitted to the jury and Pruncutz did not object to the absence of the request, both parties in effect "agreed to submit that phase of the case to the Court rather than the jury for a determination." *Id.* There was no dispute that $17,500 was the amount Pruncutz was to pay Quinney under their settlement agreement. The trial court impliedly found in favor of Quinney on the damage issue in the amount of $17,500. There is ample evidence in the record to support a finding that Quinney suffered damages in the amount of $17,500 as a result of Pruncutz's breach of the settlement agreement. Thus, Pruncutz's eighth issue is overruled.

Pruncutz next argues that Quinney has not shown an entitlement to attorney's fees. She argues that because the evidence is insufficient to support Quinney's claim for violations of the Texas Debt Collection Practices Act, he should not have been awarded attorney's fees for prevailing under that claim.[10] Because we held that the evidence was legally and factually sufficient to support the jury's finding of a violation of the Texas Debt Collection Practices Act, Quinney was entitled to attorney's fees. *See* Tex. Fin. Code Ann. § 392.403(a) (West 1998) (prevailing party in suit for injunctive relief or actual damages may recover attorney's fees). Pruncutz's ninth issue is overruled.

By her final issue, Pruncutz argues that the trial court miscalculated the interest. She posits that this Court must reverse the $17,500 damages found by the trial court and reform the judgment accordingly. Thus, the reformation would require a recalculation of the interest. Because we disagree with Pruncutz's argument that the trial court's finding of damages was erroneous, we

---

[10] Quinney did not seek attorney's fees for his breach of contract claim.

18

also disagree that the judgment must be reformed and the interest recalculated.  We overrule this issue.

**CONCLUSION**

Having overruled all of appellant's issues, we affirm the trial court's judgment.

_____

Marilyn Aboussie, Chief Justice

Before Chief Justice Aboussie, Justices Yeakel and Patterson

Justice Patterson concurs in the result only.

Affirmed

Filed:   December 20, 2001

Do Not Publish