Herman BROWN and Thelma Jean
Brown: Harry B. Friedman and
Sherman A. Kusin, Sureties, Petitioners,

v.

OAKLAWN BANK, Respondent.

No. C–5323.

Supreme Court of Texas.

July 16, 1986.

Rehearing Denied Nov. 26, 1986.

Harry B. Friedman, Harkness, Friedman
& Kusin, Rick Rogers, Hall & Rogers, Tex-
arkana, for petitioners.

John R. Morriss, Atchley, Russell, Wal-
drop & Hlavinka, Texarkana, for respon-
dent.

WALLACE, Justice.

This case arises out of a bank error resulting in an overpayment of a closed account. The primary question presented is the extent to which a creditor may use the threat of criminal prosecution to procure payment of a debt under the Texas Debt Collection Act. TEX.REV.CIV.STAT. ANN. art. 5069–11.02 (Vernon 1986). In an unpublished opinion, the court of appeals affirmed the trial court's judgment that Oaklawn Bank did not violate the Texas Debt Collection Act by making threats of criminal prosecution. We affirm the judgment of the court of appeals in part, reverse in part, and remand to the trial court for further proceedings.

The Browns maintained a savings account at Oaklawn. On October 8, 1982, Oaklawn withdrew $7,150 from the account pursuant to a court order of garnishment in a separate proceeding involving the Browns. They sent a letter to Brown informing him that the remaining balance was approximately $2,198. However, the withdrawal of $7,150 was never posted to the Browns' account. On October 12, Brown went to Oaklawn to close his account. The teller attempted to tender to Brown the balance of $9,348.

Brown informed the teller that the amount was too much. The clerk checked with her immediate supervisor who in turn checked with the senior vice president of Oaklawn, a Mr. Turner, and both confirmed the transaction. One of Oaklawn's employees represented to Brown that the discrepancy was due to the accumulated interest in the account. Accordingly, Brown was given a check for $9,348. Shortly after leaving the bank Brown deposited the money into accounts for his four children at Texarkana Terminal Employee's Federal Credit Union.

That afternoon, Oaklawn became aware of their mistake and called Brown to inform him that he had received too much money. Brown told them that he did not know what was going on, that he thought everything had been cleared up when he was at the bank, and told the Oaklawn representative to contact his attorney to work out the dispute.

The next day, Turner wrote Brown a letter advising him that Oaklawn and the local district attorney were prepared to bring criminal charges against him. In addition, the local district attorney, Mr. Raffaelli, wrote Brown a similar letter, stating that he would issue a warrant for his arrest on October 18, if the money was not returned. At the time of the incident, Mr. Raffaelli was an associate director of the bank.

On October 27, Oaklawn filed a Writ of Attachment on the funds deposited at Texarkana Employees Federal Credit Union based on an affidavit wherein a senior vice president of Oaklawn swore that Brown had obtained the property under false pretenses. Shortly thereafter, the Browns filed a replevy bond for the funds, listing Friedman and Kusin as sureties. The sureties were not made parties to the suit and were not served with notice of the pending trial and consequently were not represented at the trial.

In its findings of fact, the trial court held that Oaklawn did not falsely accuse Brown of fraud or any other crime; did not threaten a debtor with arrest for nonpayment of the debt without proper court proceedings; and did not threaten to file charges, complaints, or criminal action against a debtor who had not violated any criminal laws. Additionally, the court found that Oaklawn had no desire or intent to harm or injure the Browns and that they suffered no damages as a result of the actions of Oaklawn.

■ Nonjury findings of fact are reviewed by an appellate court in the same manner as a jury verdict. When considering a no evidence point, we must examine the record to determine if there is at least some evidence of probative force to support the findings of the trier of fact. *Akin v. Dahl*, 661 S.W.2d 917, 921 (Tex.1983). If there is any evidence of a probative nature to support the finding, the judgment of the trial court will not be set aside. *Ray v. Farmer's State Bank of Hart*, 576 S.W.2d 607, 609 (Tex.1979).

■ We hold there is no evidence to support the trial court's finding that Oaklawn did not violate the Texas Debt Collection Act. The relevant portions of Article 5069–11.02 provide:

*Threats or Coercion.*

No debt collector may collect or attempt to collect any debt alleged to be due and owing by any threats, coercion, or attempts to coerce which employ any of the following practices:

. . . . .

(b) accusing falsely or threatening to accuse falsely any person of fraud or any other crime;

. . . . .

(e) threatening that the debtor will be arrested for nonpayment of an alleged debt without proper court proceedings; ...

(f) threatening to file charges, complaints, or criminal action against a debtor when in fact the debtor has not violated any criminal laws; ...

A review of its history indicates that the Legislature passed the Debt Collection Act to prevent creditors from preying upon a consumer's fears and ignorance of the law to pursue allegedly delinquent debts. *See* Comments of Senator Gammage, Hearings on S.B. 252 before the Senate Jurisprudence Committee, 63rd Leg. (April 6, 1973). Unquestionably, the threat of criminal prosecution is one of the most frightening and embarrassing ordeals to which an individual can be subjected. The fact that the Legislature specifically referenced criminal prosecution or threats of criminal prosecution at least three times in this section of the Act acknowledges the extent of the problem as it existed in the creditor-debtor relationship at the time the Act was passed and the magnitude of potential harm to the debtor.

In the present case, Oaklawn does not dispute that the letters were sent to Mr. Brown or that they threatened him with criminal prosecution. Rather, they rely solely on their contention that Brown was in fact guilty of criminal offenses. This reasoning begs the question. We decline to accept a standard giving the creditor the power and authority to determine the guilt or innocence of an individual debtor. Similarly, a trial court cannot assume that responsibility in a civil proceeding to enforce the debt.

Our Constitution has steadfastly adhered to the fundamental principle that a person is innocent until his guilt is established beyond a reasonable doubt. Pursuant to that mandate, an intricate system of procedural protections is maintained to protect the individual against spurious allegations. To allow creditors or their representatives to circumvent proper procedures would make a mockery of that system. We therefore hold that Oaklawn's threats of criminal prosecution violate the Debt Collection Act as a matter of law.

■ The Browns also complain of the trial court's finding that they suffered no damages. They contend that the court used the wrong standard to assess damages. We agree. In its findings of fact, the court found that Oaklawn had no desire or intent to injure the Browns. Intent on the part of the wrongdoer is not a prerequisite to recovery under the Debt Collection Act. It is sufficient to show that the harm incurred was a reasonably foreseeable result of the wrongdoer's conduct.

■ Article 5069–11.10 allows recovery for actual damages, punitive damages, and attorney's fees, all of which were pleaded by the Browns. In a trial to the court, both Brown and his wife testified that they were seriously upset by the criminal allegations, threats to pursue criminal action, and the publicity of the present lawsuit in the local newspaper. They both had difficulty resting and sleeping for an extended period. After an upsetting conversation with representatives of Oaklawn, Mrs. Brown missed several hours of work. The strain of the overall situation affected Mrs. Brown's work performance and aggravated Mr. Brown's previous back injury. While this is some evidence of each of the elements pleaded, we cannot say that the extent of the Browns' injury has been established as a matter of law. Accordingly, we

remand this cause to the trial court for determination of damages consistent with this opinion.

The Browns also contend that Oaklawn is not entitled to recover the $7,150, relying on the case of *Greer v. White Oak State Bank,* 673 S.W.2d 326 (Tex.App.—Texarkana 1984, no writ). In *Greer,* the bank erroneously gave Greer immediate credit for an insurance proceeds check rather than handling the check as a collection item. The insurance company was insolvent and the drawee bank dishonored the check. However, the bank had paid out approximately $68,000 on Greer's account *after* they had received notice that the check would not be honored.

On appeal, the court held that the bank was entitled to restitution of the improper credit to Greer's account. However, in holding that the bank could *not* recover the $68,000 paid out, it stated that "[M]oney voluntarily paid with full knowledge of the facts and without fraud or duress cannot be recovered, although it was paid upon a void demand or a claim without foundation." *Greer* at 330. Integral to this determination was the inherent unfairness of Greer's suffering a detrimental change of position in reliance on the bank's negligence. We find no evidence that the Browns detrimentally changed their position in reliance on Oaklawn's actions. This is particularly true since the funds have not been spent and are secured by surety bond. Therefore, we hold that Oaklawn is entitled to restitution of the funds paid to Brown in excess of the correct closing balance.

We next turn to the application of the sureties, Friedman and Kusin. The replevy bond filed by the Browns was "conditioned for the payment of any judgment that may be rendered against Texarkana Terminal Employees Federal Credit Union" and named Friedman and Kusin as sureties on the bond. Neither the credit union nor the sureties were made a party to the underlying action. Friedman and Kusin contend that they are not liable on the bond because the condition was not fulfilled and that, in any event, the judgment cannot stand because they were not joined in the underlying action as a party nor were they provided notice of the pending trial.

Generally, the liability of a surety on the bond exists as a matter of law, whenever the liability of the defendant is established. *Turner v. Martin,* 45 S.W.2d 236, 237 (Tex.Civ.App.—Amarillo 1931, writ ref'd). In the case of a statutory bond, the statutory language is made part of the bond and is controlling regardless of the bond's language. *Howze v. Surety Corporation of America,* 584 S.W.2d 263, 266 (Tex.1979). Further, a bond for a particular judgment, as opposed to a general undertaking bond, binds the surety despite the fact that it is neither notified nor joined to the party. *Howze* at 265. Consequently, we find no merit in Friedman's and Kusin's writ of error. Nonetheless, our disposition of Brown's application compels us to reverse the judgment as to the sureties so that their liability may be carried with the remand on damages.

The judgments of the courts below as to the Browns' counterclaim under the Texas Debt Collection Act are reversed and remanded to the trial court for further consideration consistent with this opinion. The judgment binding the sureties on the replevy bond is reversed for the reasons stated herein and are likewise remanded to the trial court. The judgments of the trial court and the court of appeals allowing Oaklawn restitution of the overpayment of the Browns' account are affirmed.