157 F.3d 1006
 Milagros MORANTE and Glen Morante,
Plaintiffs-Appellants-Cross-Appellees,
v.
AMERICAN GENERAL FINANCIAL CENTER, et al., Defendants,
American General Financial Center a/k/a American General
Financial Services and Services Bureau of Indiana,
Defendants-Appellees-Cross-Appellants.
 No. 97-10522.
 United States Court of Appeals,
Fifth Circuit.
 Oct. 22, 1998.
 
 Michelle Elaine Robberson, Richard Brent Cooper, Cooper, Aldous & Scully, Dallas, TX, for Milagros and Glenn Morante.
 Robert John Clary, Jamie King Harrison, Owens, Clary & Aiken, Dallas, TX, for American General Finance Center and Services Bureau of Indiana.
 Appeals from the United States District Court for the Northern District of Texas.
 Before DeMOSS, PARKER and DENNIS, Circuit Judges.
 ROBERT M. PARKER, Circuit Judge:
 
 
 1
 Appellants Milagros and Glen Morante appeal the judgment as a matter of law granted after a jury returned a verdict in their favor in this debt collection practices case. Appellees American General Financial Center (AGFC) and Services Bureau of Indiana (SBI) cross-appeal the denial of their motion for attorney's fees and partial denial of their motion for costs. Alternatively on cross-appeal AGFC challenges the jury's award of exemplary damages. We vacate and remand.
 
 BACKGROUND
 
 2
 This case originally involved claims under the Federal Fair Debt Collection Practices Act, the Texas Debt Collection Act, and for breach of contract and defamation. The case was removed to federal court based upon diversity jurisdiction. The parties consented to proceed before a magistrate judge. The plaintiffs are Glen and Milagros Morante. The defendants are AGFC; SBI, a wholly-owned subsidiary of AGFC which provides collection service for AGFC; Client Services, Inc. (CSI), a debt collection agency; and Donald Alexander, a collector employed by CSI.
 
 
 3
 Mrs. Milagros Morante purchased a satellite dish system from Pidgeon's pursuant to a 12-month agreement wherein if the Morantes made full payment within 12 months, they paid no interest. Pidgeon's was to deliver the satellite dish before Father's Day, but when Mr. Morante learned he would be laid off from his job in late May or early June 1994, Mrs. Morante contacted Pidgeon's where a salesman allowed her to cancel the contract, but her $327.58 deposit would only be returned in the form of a store credit. Mrs. Morante eventually decided to use her store credit to purchase a $1600 T.V. in January 1995.
 
 
 4
 Pidgeon's sold the Morantes' account to AGFC, and AGFC began sending billing statements for the satellite dish showing the Pidgeon's account was due and owing. The Morantes also received demanding phone calls from AGFC threatening to report them to a credit agency if they did not make a payment. AGFC then turned the account over to SBI (a wholly-owned subsidiary of AGFC) which began collection efforts in November 1994.
 
 
 5
 Pidgeon's credited the Morantes' account in January 1995. SBI inquired to Pidgeon's about the account, and Pidgeon's told SBI employees as early as February 14, 1995, that the account should be credited and that the Morantes were correct that they did not owe a balance on the satellite dish. Nevertheless, in June and July 1995, SBI wrote the Morantes advising them their AGFC account was past due.
 
 
 6
 Even though the Morantes' account had been credited by Pidgeon's, SBI referred the Morantes' account to one of its outside contract collection agencies, CSI, for collection on July 25, 1995. CSI signed a written agreement with AGFC which governed CSI's collection efforts on AGFC accounts. The Morantes were subjected to more harassing and threatening phone calls from CSI and Alexander (CSI's employee). Neither AGFC nor SBI notified CSI or Alexander that the Morantes' account with Pidgeon's should have been credited with the full amount. The Morantes filed suit.
 
 
 7
 After a jury found for the Morantes on their Texas Act and Federal Act claims,[1] CSI and Alexander settled with the Morantes. With respect to SBI, the jury found that SBI violated one provision of the Federal Act and awarded $1,000 each to the Morantes for "damage to credit" and $1,000 in additional damages. With respect to AGFC, the jury found in Question No. 9 that CSI acted as AGFC's agent in attempts to collect the Morantes' account, and assessed exemplary damages of $5,000 against AGFC and $10,000 against SBI. AGFC and SBI moved for judgment as a matter of law. The magistrate judge granted the motion setting aside the jury's answers on the Federal Act claims[2] and setting aside the jury's finding that CSI was the agent of AGFC in its attempts to collect the Morantes' account. The magistrate judge ordered a take nothing judgment on all the Morantes' claims and assessed costs of court against the Morantes, awarding $7,904.10 in costs and disallowing $2,891.68 in copying costs that the magistrate judge found to be unsubstantiated. The magistrate judge denied AGFC's and SBI's request for attorney's fees in the amounts of $56,522.50 and $45,669.00 respectively under the bad faith/frivolous provisions of the Federal Act.
 
 
 8
 The Morantes appeal only one issue: whether the magistrate judge properly set aside the jury's answer with respect to CSI's agency status. AGFC and SBI have cross-appealed challenging the magistrate judge's denial of their motion for attorney's fees and partial denial of their motion for costs. On cross-appeal, AGFC further challenges the award of exemplary damages.
 
 ANALYSIS
 I. Judgment as a Matter of Law--Agency
 
 9
 This court reviews the grant of a judgment as a matter of law de novo. Freeman v. Bexar County, 142 F.3d 848, 850 (5th Cir.1998). "A jury verdict must be upheld unless there is no legally sufficient evidentiary basis for a reasonable jury to find as the jury did." Jones v. Kerrville State Hospital, 142 F.3d 263, 265 (5th Cir.1998).
 
 
 10
 In response to Question No. 9, the jury found that CSI acted as AGFC's agent but that SBI (AGFC's wholly-owned subsidiary) did not. The Agreement between AGFC and CSI provided that CSI was an independent contractor. Under Texas law, a written contract describing the parties as independent contractors is not conclusive. See Exxon Corp. v. Perez, 842 S.W.2d 629, 630 (Tex.1992). The key inquiry regarding independent contractor status is the right of control. See Exxon Corp. v. Tidwell, 867 S.W.2d 19, 21 (Tex.1993) (citing Newspapers, Inc. v. Love, 380 S.W.2d 582, 591 (Tex.1964)). It is the right of control, and not the actual exercise of control, which is determinative. See Pollard v. MOPAC, 759 S.W.2d 670 (Tex.1988); Newspapers, Inc. v. Love, 380 S.W.2d at 590.
 
 
 11
 The Morantes argue that in the Agreement between AGFC and CSI, AGFC retained numerous rights to control CSI's collection efforts on AGFC accounts. We agree. The Agreement required (1) CSI to make minimum numbers of contacts with debtors, (2) CSI supervisors to review AGFC accounts monthly, and (3) CSI to report payments weekly. The Agreement authorized AGFC to audit all AGFC accounts and inspect CSI's books at any time during normal business hours and also required CSI, upon seven days' notice, to provide a complete list of all AGFC accounts and their current status. The Agreement further required initial contact with a debtor within twenty-four hours of receipt of the account. The Agreement set out specific guidelines to determine whether an account was closed such as: (1) six unsuccessful contacts during different times of the day or week; (2) three "neighbor" contacts to update debtor location information; (3) contact with credit bureaus, employers, and motor vehicle registration; or (4) the account has had no payment activity for three months and is not in litigation.
 
 
 12
 The Agreement required approval by AGFC for settlement or compromise of a claim, and it prohibited CSI from instituting a civil suit on any AGFC account without AGFC's express written authorization. Once authorization was given, CSI was required to proceed with legal action within seven days. With respect to legal proceedings on all AGFC accounts, the Agreement expressly prohibited CSI from arresting any person or obtaining an order for bodily attachments. The Agreement also required CSI to be courteous, dignified and businesslike and to "refrain from any practice which may reflect discredit upon American General or adversely affect American General's reputation." Agreement, p. 6. Finally, under the terms of the Agreement, CSI was paid a percentage of all debts collected as compensation.
 
 
 13
 In addition to the provisions of the Agreement which clearly set forth the many areas in which AGFC controlled CSI's collection efforts, testimony at trial verified that AGFC managed the details of CSI's collection work to the extent provided in the written Agreement. One of CSI's officers, Martin Jacobson, verified that the Agreement accurately reflected the relationship between CSI and AGFC. We find that the Agreement and Jacobson's testimony provided sufficient evidence for the jury to conclude that CSI was the agent of AGFC.
 
 
 14
 Our independent review of the record reveals an additional reason why AGFC's renewed motion for judgment as a matter of law should have been denied with respect to the agency question. At the close of the plaintiff's case, AGFC moved for judgment as a matter of law on numerous grounds but never argued that there was insufficient evidence that CSI was the agent of AGFC. Supp. Rec. Vol. 4:152-161. At the close of all the evidence,[3] AGFC renewed its previous motion for judgment as a matter of law "for all the reasons previously stated." Rec. Vol. 12:3. After the charge conference, AGFC made its objections to the proposed jury charge, but never challenged the instruction with respect to the agency issue either because there was insufficient evidence to submit the agency issue to the jury or because the instruction was erroneous as a matter of law. Rec. Vol. 12:5-14. However, after the jury returned its verdict, AGFC and SBI filed a renewed motion for judgment as a matter of law arguing for the first time that CSI was an independent contractor and not the agent of AGFC. Rec. Vol. 10:1521, 1532-36. It is well-settled in this circuit that a motion for judgment as a matter of law filed post verdict cannot assert a ground that was not included in the motion for judgment as a matter of law made at the close of the evidence. See, Allied Bank-West, N.A. v. Stein, 996 F.2d 111, 115 (5th Cir.1993)(explaining that under Rule 50, a motion for directed verdict is a prerequisite and "virtually jurisdictional" so that a motion for JNOV cannot assert a ground that was not included in the motion for directed verdict). See also Perricone v. Kansas City S. Ry. Co., 704 F.2d 1376, 1380 (5th Cir.1983). In Sulmeyer v. Coca Cola Co., 515 F.2d 835, 846 n. 17 (5th Cir.1975), this court explained that "[i]t would be a constitutionally impermissible re-examination of the jury's verdict for the district court to enter judgment n.o.v. on a ground not raised in the motion for directed verdict."
 
 
 15
 In light of the foregoing, we conclude that the magistrate judge erred in granting a judgment as a matter of law and setting aside the jury's verdict with respect to the agency status of CSI.
 
 II. Exemplary Damages against AGFC
 
 16
 AGFC mounts numerous challenges to the exemplary damages awarded by the jury. AGFC's arguments are meritless, and at times border on the frivolous. We perceive no inconsistency in the special interrogatories. AGFC was found liable for exemplary damages due to the collection efforts of its agent CSI. AGFC argues that CSI was not subject to the version of the Texas Debt Collection Act in effect at the time of trial. The Texas Act defined a "debt collector" as "any person engaging directly or indirectly in debt collection...." Tex. Civ. Stat. Ann. art. 5069-11.01(c). "Debt collection means any action, conduct, or practice in soliciting debts for collection or in collecting debts owed or due, or alleged to be owed or due a creditor by a consumer." Tex. Civ. Stat. Ann. art. 5069-11.01(b) (emphasis added). The crux of AGFC's argument is that AGFC was not a "creditor" as defined in the Texas Act. "Creditor means a party to a consumer transaction other than a consumer." Tex. Civ. Stat. Ann. art. 5069-11.01(f). AGFC asserts that it was not a creditor because it was not a "party to a consumer transaction." AGFC cites no authority to support this assertion. Our research fails to reveal any cases indicating that a company like AGFC would not be considered a "creditor" for purposes of the Texas Act in effect at the time of the suit.
 
 
 17
 Finally, exemplary damages are available under the Texas Act. See Brown v. Oaklawn Bank, 718 S.W.2d 678, 680 (Tex.1986); Waterfield Mortgage Co. v. Rodriguez, 929 S.W.2d 641, 645-47 (Tex.App.--San Antonio 1996, no writ). Upon review of the record we conclude that the evidence was sufficient to support an award of exemplary damages. See Waterfield Mortgage Co., 929 S.W.2d at 645 (holding that under the Texas Act evidence necessary to support a finding of punitive damages under common law will suffice). Mrs. Morante testified that despite telling representatives of AGFC over the phone and writing letters that she canceled the satellite dish order and owed no money, she continually received harassing phone calls at different times of the day and on weekends. She testified about one particular call where the caller threatened to report her to a credit agency if they did not receive payment within two weeks.
 
 
 18
 She also testified about another call from CSI's collector Alexander who identified himself as representing AGFC. According to Mrs. Morante, Alexander was rude and demanding and told her that if she did not pay within thirty days he would sue her. Mrs. Morante further testified that Alexander told her he knew where she worked, knew how much her house was worth, and knew how much money she had in the bank. Mrs. Morante tried to explain to Alexander that she had sent a letter disputing the debt as she never received a satellite dish, but that Alexander asked her if she knew she was committing a crime. Although AGFC, CSI, and Alexander deny that any of these events occurred, the jury was able to hear Mrs. Morante and Alexander testify and make its determination regarding credibility and exemplary damages. We will not overturn that judgment. The verdict with respect to exemplary damages against AGFC should be reinstated.
 
 III. Costs and Attorney's Fees
 
 19
 The district court's partial award of costs for AGFC and SBI is vacated in light of the foregoing.
 
 
 20
 The case is remanded for the district court to reinstate the jury's verdict with respect to the agency status of CSI and with respect to the exemplary damages awarded against AGFC. Upon remand, the district court is to determine the costs of court to be awarded to the Morantes.
 
 
 21
 VACATED AND REMANDED.
 
 
 
 [1]
 The jury found that CSI knowingly violated certain provisions of the Texas Act, which was a producing cause of damages to the Morantes. The jury awarded Mrs. Morante $500 in past mental anguish damages and $1000 in additional damages. The jury also found that CSI and Alexander violated the Texas Act recklessly, intentionally, or with callous disregard to the Morantes' rights
 With respect to the Federal Act, the jury found that CSI violated one provision, and SBI violated one provision. The jury awarded Mrs. Morante $1000 in past mental anguish damages and awarded both Morantes $1000 each for damage to credit in connection with the Federal Act violations. The jury also awarded $1000 each against SBI and CSI as additional damages for violating the Federal Act.
 The jury further found in Question No. 9 that CSI was acting as an agent of AGFC in its attempts to collect the Morante's account. Based upon its finding that CSI acted recklessly, intentionally, or with callous disregard to the Morantes' rights, the jury awarded the Morantes $45,000 in exemplary damages. The jury assessed $5,000 against AGFC, $10,000 against SBI, and $30,000 against CSI.
 The jury declined to hold the defendants liable for breach of contract or defamation.
 
 
 [2]
 The magistrate judge also set aside the award against SBI on the Federal Act claim concluding that there was no evidence that SBI's "principal business" was debt collection; thus SBI fell within the Act's exemption provided in 15 U.S.C. § 1692a(6)(B). The Morantes do not appeal this decision
 
 
 [3]
 Immediately after the plaintiffs rested, AGFC made its motion for judgment as a matter of law and rested. Supp. Rec. Vol. 4:161